WELLE v. CELLULOID CO.

(Supreme Court, Appellate Division, First Department. June 22, 1900.)

MASTER AND SERVANT—INJURIES TO SERVANT—DEFECTIVE APPLIANCES—EVIDENCE.

Plaintiff was engaged, with a fellow workman, in dumping acid pots. Each put a hook into a lug on its opposite sides, and then raised the pot by a windlass. While plaintiff was swinging the pot around to affix the chain to the back part thereof, to dump it, the pot dumped over, by reason of the hook placed by the fellow workman slipping or giving way, and plaintiff was injured. There was no evidence that the hook had been improperly placed in the lug, and the only evidence as to what caused the accident was the testimony of an expert, who had never seen the machinery, and had no knowledge of its condition, in answer to a hypothetical question, that the accident might have happened from the hook slipping back towards the point after being properly placed in the lug, by reason of its faulty construction. Held, that such evidence was not sufficient to sustain a finding that the accident was occasioned by the shape of the hook.

Rumsey, J., dissenting.

Appeal from trial term, New York county.

Action for injuries by Bernard Welle against the Celluloid Company. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and RUMSEY, McLAUGH-
LIN, and INGRAHAM, JJ.

Stephen C. Baldwin, for appellant.
Joseph Larocque, for respondent.

INGRAHAM, J.　The plaintiff had been in the employ of the defendant for several years, working in what was called the "acid room," and the work at which he was engaged required him to dump the contents of certain pots containing acid into what was called a "whizzer." These pots were placed upon a turntable, which was below the whizzer, so that the pots had to be lifted before they could be dumped. The plaintiff had been away from the factory in consequence of sickness, and returned the week of the accident. When he returned he noticed that the hooks used to attach these pots to the chain with which they were raised were smaller than those that had been in use before he left. Two men seem to have been engaged at this work, each man putting a hook into a lug upon one side of a pot. The pot was then raised by a windlass about three feet above the turntable upon which it had rested. After lifting the pot the plaintiff was required to affix a chain to the back of the pot, so as to dump it. The plaintiff and his associate having lifted this pot by means of the windlass, the plaintiff went around to affix this chain to the back of the pot. He placed his hand upon the pot to swing it around, and as he did so the pot dumped over, and he was badly scalded. The hook that slipped or gave way was the hook that had been placed in position by the plaintiff's fellow workman. There was evidence that about a week before this accident, during the plaintiff's absence, a hook had slipped while a pot was being lifted, but there is no evidence that this fact had been called to the attention of the defendant or any of its officers. Nor is there any evidence as to what caused the hook to slip on either occasion. When at the time of this accident the hook slipped, the whole weight of the pot rested upon the two hooks affixed to the sides of the pot, as the pot had been lifted from the turntable upon which it had rested. It also appeared that on this occasion, after the plaintiff and his associate had placed the hooks in the side lugs, the pot, which weighed from nine to twelve hundred pounds, "lifted all right,—lifted straight up." The lugs upon the side of the pot were examined after the accident, and found to be more or less worn, but there was no evidence that this wearing of the lugs had anything to do with the accident. A witness called for the plaintiff was asked a hypothetical question which assumed the facts which had been sworn to on behalf of the plaintiff, and the witness was then asked, "Are you able to state with reasonable certainty what would occasion the fall of that pot?" The answer was, "The hook was too short, and the hook had an open mouth." In explaining his answer the witness stated: That the natural axis of the hook that had been produced as the one in use at the time, hanging free in the chain, was perpendicular. "Now, when this hook is placed in the lug, through a hole, this hook catching on that lug, the axis becomes a forced axis." That it seats nearer the top than it does the base of the hook. That

it is impossible, with a hook of that character, to have a vertical axis. That, if a longer hook had been used, there would have been no opportunity for the lug to catch on the point of the hook. That, if the hook had not been properly inserted in the lug,—had been inserted so that the point of the hook rested on the side of the opening of the lug,—the pot would have fallen, either in hoisting, or upon the application of a very little force. That if the hook had been originally placed in a proper condition, clear down to the bottom, where it rested on the lug, it could not have fallen, but if, after placing it in the lug, it had then dropped back, it would then remain at the place where it caught on the side, making a new axis. That it was impossible, if the hook was in a proper position in the lug, for the pot to overturn, so long as it remained in equilibrium. Upon this evidence, the court dismissed the complaint.

I cannot see that there is evidence as to what caused this hook to slip. If the hook had not been properly placed in the lug, so that it had caught upon the point of the hook, instead of the bottom, the action of the plaintiff in turning the pot may have caused the point of the hook to slip; but I cannot see how, if the hook had been properly placed in the lug, so that the weight had come upon the bottom of the hook, the mere touching of the pot could have caused the hook to slip, and the pot to fall. But for the expert testimony to which attention has been called, there was no evidence to justify a finding that this accident happened because of any defect in the machinery or appliances for which the master was responsible. We have the testimony of the expert that if, after the hook had been placed in position, it had fallen back so that it caught, not at the bottom of the hook, but some distance up, towards the point, it was possible for the hook to slip, in consequence of its shape and character, without the equilibrium of the pot being interfered with; and it is upon this latter answer, if at all, that there can be an inference that a defect in the hook could have caused the accident. But there is no evidence that the accident happened because of this possibility testified to by the expert. Nor does the slipping of the hook, which happened on the former occasion, about which testimony was given, tend at all to explain why this hook slipped under the conditions existing at the time of this accident; for that hook slipped when the pot was being lifted, thus presenting an entirely different condition from that which existed at the time of this accident, when the hook slipped after the pot was lifted, and its whole weight, of about 1,000 pounds, was resting upon the hooks. We have thus a case presented with no evidence to show what caused the accident, except the testimony of an expert as to what, in his opinion, might have happened, but who had never seen the machinery, had no knowledge of its condition, and could only testify from a hypothetical question. Would such an opinion justify a finding that this accident was caused by an improper appliance furnished by the master for the use of his servant? I cannot think that it would. It is perfectly apparent, and is admitted by the expert witness called by the plaintiff, that, if the hook had been placed in the lug so that the point of the hook caught upon the lug, the accident would have happened

just as it did; and for such an accident it is clear that the defendant would not have been liable. The only effect of this expert testimony was that, in the opinion of the witness, it was possible that it happened in some other way, although, so far as I can understand his answers, the other way was that, after the hook had been placed in position in the lug, in consequence of the slackness of the chain it might have fallen back so that the bearing point of the hook would have been towards its point, rather than at the bottom. In either case the accident would have resulted from the fact that the bearing point on the hook was towards the point rather than at the bottom,—in one case, because the hook had not been properly placed in the lug; and in the other, because the hook, while properly placed, had fallen back, and, from the shape of the hook, when the strain came the bearing point would have been at some other place than at the bottom of the hook, which would have been safe. But this is all the merest conjecture. There is no evidence to show that the hook was properly placed in the lug before the pot was raised,—nothing to show that the accident did not happen because of some negligent or improper attachment of the hook to the pot. An accident happened, which is explainable upon the assumption that the hook was improperly placed in the lug; no evidence that it was properly placed there; and evidence of an expert that, if it had been properly placed there, it might have fallen because of the shape of the hook. I do not think that, from such evidence, a finding of the jury that this accident was occasioned because of the shape of the hook would have been sustained by the evidence.

I think, therefore, that the judgment should be affirmed, with costs.

PATTERSON, P. J., and McLAUGHLIN, J., concur. RUMSEY, J., dissents.