BERNARD WELLE, Appellant, v. THE CELLULOID COMPANY, Respondent.

1. NEGLIGENCE — INJURY FROM DEFECTIVE APPLIANCES — MASTER AND SERVANT — RISK OF EMPLOYMENT — QUESTION OF FACT. A common laborer in a dangerous occupation who has been away from his employment, and upon his return works for a week with appliances which to his knowledge have been changed in his absence, but who did not know of the danger the change involved, cannot be said as a matter of law to have assumed the risk of the use of the appliances by continuing in the employment unless their defects were obvious.

2. WHEN NEGLIGENCE OF MASTER A QUESTION OF FACT. In changing the appliances the master is bound to use reasonable care to see that the new are equally safe with the old, and if he may be found chargeable with knowledge of the danger caused by the change which would not be imputed to a common laborer, he cannot be said as a matter of law to be free from negligence.

*Welle* v. *Celluloid Co.*, 52 App. Div. 522, reversed.

(Argued May 18, 1903; decided June 16, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered August 1, 1900, affirming by a divided court a judgment for the defendant entered upon a dismissal of the complaint at Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Stephen C. Baldwin* for appellant. Whether the plaintiff had equal knowledge with the defendant of the risks, and assumed it, was a question for the jury. (*Daley* v. *Union Dry Dock Co.*, 29 N. Y. Supp. 1063; 151 N. Y. 649; *Johanssen* v. *Eastmans Co.*, 44 App. Div. 270; 168 N. Y. 648; *O'Maley* v. *Light Co.*, 158 Mass. 135; *Galazzo* v. *Steamship Co.*, 27 App. Div. 169; *Yaw* v. *Whitmore*, 46 App. Div. 422; 167 N. Y. 605; *Larkin* v. *Washington Mills Co.*, 95 N. Y. S. R. 93; *Fancher* v. *N. Y., L. E. & W. R. R. Co.*, 75 Hun, 350; *Fowler* v. *Buffalo Furnance Co.*, 41 App. Div. 84; *Young* v. *S., B. & N. Y. R. R. Co.*, 45 App.

26

Div. 296; 166 N. Y. 227; *Pantzar* v. *Tilly Foster I. Mining Co.*, 99 N. Y. 368; *McGovern* v. *Central Vermont R. R. Co.*, 123 N. Y. 280; *Dowd* v. *N. Y., O. & W. Ry. Co.*, 170 N. Y. 159.) The nonsuit cannot be sustained on the theory that the casualty was contributed to by the negligence of a fellow-servant. (*Galazzo* v. *Nat. Steamship Co.*, 27 App. Div. 169; *Coppins* v. *N. Y. C. & H. R. R. R. Co.*, 122 N. Y. 562; *Stringham* v. *Stewart*, 100 N. Y. 516; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 552; *Cone* v. *D., L. & W. R. R. Co.*, 81 N. Y. 206.)

*Joseph Larocque, Jr.*, for respondent. Assuming that the machinery and appliances were in fact dangerous, plaintiff failed to prove knowledge of such condition on the part of defendant. Without such knowledge, either actual or constructive, defendant cannot be held liable. (*Charles* v. *Taylor*, 30 Eng. Rep. [Moak] 347, note, and cases there cited; Whart. on Neg. § 213; *Burke* v. *Witherbee*, 98 N. Y. 562; *Stringham* v. *Stewart*, 27 Hun, 562; *McGrell* v. *Buffalo Office Building Co.*, 153 N. Y. 265; *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y. 562; Beach on Con. Neg. [3d ed.] 495.) Plaintiff's case, while it fails to prove either actual or constructive knowledge on the defendant's part that the hooks were dangerous, shows conclusively his own actual knowledge of their exact character and condition. By remaining in defendant's employ, therefore, he assumed whatever risk was incident to their use. (*Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y. 562; Beach on Con. Neg. [3d ed.] 495; *Tuttle* v. *Milwaukee Railway Co.*, 122 U. S. 189; *Knisley* v. *Pratt*, 148 N. Y. 372; *Crown* v. *Orr*, 140 N. Y. 450; *Monzi* v. *Friedline*, 33 App. Div. 217; *Freeman* v. *G. F., etc., Co.*, 70 Hun, 530; 142 N. Y. 639; *De Young* v. *Irving*, 5 App. Div. 499.) To entitle plaintiff to recover he must prove affirmatively absence of contributory negligence. This he wholly failed to do. (*Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 248; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 330; *Becht* v. *Corbin*, 92 N. Y. 658; *Wiwirowski* v. *L. S. & M.*

*S. Ry. Co.,* 124 N. Y. 420; *Weston* v. *City of Troy,* 139 N. Y. 281; *Whalen* v. *C. G. L. Co.,* 151 N. Y. 70.) Plaintiff cannot recover for injuries caused by the negligence of a fellow-servant. (*Crispin* v. *Babbitt,* 81 N. Y. 516; *Sherman* v. *R. & S. R. R. Co.,* 17 N. Y. 153; *Newbauer* v. *N. Y., L. E. & W. R. R. Co.,* 101 N. Y. 607; *McCosker* v. *L. I. R. R. Co.,* 84 N. Y. 77; *Hussey* v. *Coger,* 112 N. Y. 614.)

CULLEN, J.     The action is brought by servant against master to recover damages for personal injuries alleged to have been caused by the negligence of the latter in furnishing unsafe and improper tools for use in the work. The details of the operations required in the manufacture of the defendant's product it is unnecessary to recite further than to say that large quantities of paper or pulp were treated with a mixture of nitric and sulphuric acid. The paper was put in an iron cylinder or circular pot about three feet high and eighteen inches in diameter. The acid was then poured into the cylinder, where it was allowed to remain for about half an hour, after which time it was drawn off. The pot had two lugs, or ears, in which there were eyes. When the acid was to be drawn off, two hooks attached to an iron chain running through a pulley above were put into the lugs, the pot raised by a windlass and then its contents dumped into a spout called a whizzer. The plaintiff had been employed in this work between three and four years. The hooks which during this period had been used to raise the pots were long straight hooks, that is to say, the two parts of the hook were parallel and the return part extended so as to bring the point even with the eye through which the chain was attached. The plaintiff had been away from the work for a short time, returning about a week before the accident. During his absence there had been substituted for the hooks previously used short hooks with flaring mouths, the portion of which towards the point was curved so that the point was directed outwards towards the base of the hook. On the occasion of the accident the plaintiff and a fellow-workman put the hooks into the lugs.

The plaintiff (whether alone or with the other workman does not clearly appear) then went to the windlass and raised the pot. He returned to the pot, placed his hands upon it to turn out its contents when the hook which had been inserted by his fellow-workman pulled out, that side of the pot fell down and the acid was discharged upon the plaintiff by which he was severely burned and one eye destroyed. It appeared that on one occasion during the absence of the plaintiff from the work the hook had pulled out during an attempt to raise the pot. Expert evidence was given by the plaintiff tending to show that the new form of hook was likely to pull out on account of its shape; that when the chain was tautened in raising the pot, the lug, instead of settling down to the base of the hook, might easily and naturally rest on the curve at the mouth of the hook and thus what is called a forced axis be formed; that in such situation, any movement of the pot would tend to throw it off the hook and that it might slip off the hook without being moved. At the close of the plaintiff's case the learned trial court dismissed the complaint, holding that as the plaintiff had worked for a week with this kind of hooks he had assumed the risk of their use. The judgment on the nonsuit was affirmed by the Appellate Division, a majority of the court believing the evidence insufficient to warrant the submission of the question of defendant's negligence to the jury.

Though the case is a close one we think the nonsuit was erroneous. Doubtless, the plaintiff by his long service, three or four years, assumed the risks which the general plan or method of the operations of the defendant involved. Therefore, the evidence of an expert as to the manner in which acid was handled in other factories and the one in common use was properly excluded. But the plaintiff did not necessarily assume the risk of defective or improper appliances in that plan or method of work, unless the defect was obvious or he had so long used the appliance as to be chargeable in law with knowledge of its insufficiency. He had the right to rely on the presumption that the master had done his duty in furnish-

ing safe and suitable appliances. So far as his experience had gone he had seen that there was no danger of the pot falling off the hooks or of the hooks pulling out of the lugs. The jury might have found that the accident was caused by the change in the form of the hooks. The plaintiff knew of this change, but it does not follow that he knew of the danger which the change involved. If he did not, then continuance in his employment was not an assumption of the risk. (*Kain* v. *Smith*, 89 N. Y. 375; *Davidson* v. *Cornell*, 132 N. Y. 228.) Prior to the accident he had not known of the new hooks failing, and though the hooks themselves are very simple appliances, we think it would be going too far to hold as a matter of law that a common laborer in such work as carried on in the defendant's factory should have foreseen the risk their use involved. As to this issue the burden of proof rested on the defendant. (*Dowd* v. *N. Y., Ont. & W. Ry. Co.*, 170 N. Y. 159.)

The question of the defendant's negligence was also for the jury. While it had the right to select its own method of carrying on its work and was not required to adopt the latest or most approved devices, still, it was bound to see that its appliances were reasonably safe and suitable for the purpose. "It was the duty of the defendants to guard against such accidents as could be foreseen as liable to occur by the exercise of reasonable care." (*Del Sejnore* v. *Hallinan*, 153 N. Y. 274.) In determining what are safe appliances it must be remembered that the care taken should be proportionate to the danger. The defendant was using substances which necessarily involved its laborers and employees who worked with them in great danger. If any workman's person came into contact with the acid most grievous injuries would follow. This was appreciated, for formerly in this room there had been a tank of water for any workman who might get burned by the acid to throw himself in. If the hook had been used to attach to an oxchain to draw logs comparatively little attention need have been paid to its form, providing that the hook was sound and strong. But the raising of cylinders full

of acid, by the fall of which the persons of the workmen might be seriously injured or their lives endangered, would involve other considerations. The old form of hooks had been used with safety for years. As we have in the present record only the evidence in behalf of the plaintiff, no reason appears why the form of hook was changed. In making that change the defendant was bound to use reasonable care to see that the new appliance was equally safe with the old, and the jury might have found that the master was chargeable with knowledge of the danger caused by the change which would not be imputed to a common laborer. It is in this respect that the present case is to be differentiated from that of *Burke* v. *Witherbee* (98 N. Y. 562). There the appliance, the failure of which caused the accident, had worked safely for a long period, and there was no proof that the master should have known that in any way it was unsuitable for the purpose for which it was used. The proof here is to the contrary.

The judgment should be reversed and a new trial granted, costs to abide the event.

HAIGHT, J. (dissenting). The iron cylinder or pot was hoisted by means of an ordinary chain and hook, which were fastened to the cylinder by hitching the hook in the ring or ear upon the side of the cylinder. In this case the hook was hitched to the cylinder by a co-servant of the plaintiff. Had he placed the hook in the ring and held it there until the chain became taut the hook could not have slipped out and the accident would not have occurred. The trouble resulted from the fact that the servant did not put the hook in the ring but only the point of it underneath the ring; and as soon as the plaintiff took hold of the cylinder and tilted it up it slipped off from the point of the hook and fell. This, to my mind, was clearly the result of the negligent manner in which the co-servant did his work.

The contention that the plaintiff did not understand the defects in the appliance and, therefore, did not assume the risks of the employment appears to me to have no support

whatever in the evidence. The hook upon the chain was of the pattern in common use and it would be difficult to find a farmer's child of ten years of age who would not know that, if the ring was hitched upon the point of the hook, it would be liable to slip off. The appliance was as simple and as well understood as the ordinary hammer or barn shovel, and if the plaintiff or his co-employee had possessed any intelligence whatever he must have known how the hook should have been hitched to the cylinder.

I favor an affirmance.

PARKER, Ch. J., O'BRIEN and MARTIN, JJ., concur with CULLEN, J.; GRAY and WERNER, JJ., concur with HAIGHT, J.

Judgment reversed, etc.