JOHN LARSON, Appellant, *v.* THE NASSAU ELECTRIC RAILROAD COMPANY, Respondent.

Master and servant — effect of rule (Railroad Law, § 64) declaring master chargeable with knowledge of defect if inspection would have shown it — proof showing the existence of a defect prima facie evidence of negligence — injury to motorman of trolley car caused by defective brake — when " proximate cause " and assumption of risk questions for jury.

1. The plaintiff was a motorman in the defendant's service. There is evidence that there was a defect in the air brake of his car arising from the failure of the automatic pump to correct the leakage of air therefrom. On the day of the accident the plaintiff had gone some distance, when he started to transfer his passengers to a car ahead. He set his air brake in the emergency position, which, if all had been in order, would have kept the car stationary. He then left his own car to adjust the pole of the car ahead. The space between the two cars was only five feet. While the plaintiff's back was turned, his own conductor pulled the pole of his car from the trolley wire, and cut off the power from the pump. Almost immediately the brake loosened, the car slid forward on a down grade, and the plaintiff was crushed between the bumpers. Section 64 of the Railroad Law (Cons. Laws, ch. 49), aside from its modification of the fellow-servant rule, does two things: *First,* when a defect exists, and knowledge of " such defect " could have been obtained by reasonable care and

inspection, the corporation is declared to be chargeable with the knowledge; *second,* to escape the hardship of the old rule, a new presumption has been established. When the fact of a defect in the condition of the ways, works, etc., has been proved, "the same shall be *prima facie* evidence of negligence." Hence, under the statute the plaintiff need not prove as part of his *prima facie* case that the defect arose at a time and under conditions when reasonable inspection would have revealed it. (*Kent* v. *Erie R. R. Co.,* 217 N. Y. 349, followed.)

2. Whether the defect in the brake was the proximate cause of the accident which followed was upon the facts a question for the jury, as was also the question whether the risk was so obvious or so imminent as to cast the duty of the assumption of the risk upon him.

*Larson* v. *Nassau Electric R. R. Co.,* 165 App. Div. 887, reversed.

(Argued February 4, 1918; decided February 26, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered February 11, 1915, affirming a judgment in favor of plaintiff entered upon a dismissal of the complaint by the court at a Trial Term in an action to recover for personal injuries alleged to have been sustained by plaintiff through the negligence of the defendant, his employer.

The facts, so far as material, are stated in the opinion.

*Vine H. Smith* for appellant. Under section 64 of the Railroad Law proof of the leak in the brake was sufficient *prima facie* to establish defendant's negligence without evidence that it was discoverable by inspection. The Appellate Division's decision that plaintiff was required to prove further that the leak was so discoverable is repugnant to the plain and emphatic provisions of the act and calculated to defeat its purpose. (Cons. Laws, ch. 49, § 64; *Scott* v. *International Paper Co.,* 204 N. Y. 49; *Kelliher* v. *Brown & Co.,* 242 Penn. St. 499.)

*D. A. Marsh* and *George D. Yeomans* for respondent. There is no evidence of the existence of any "defect"

in the braking mechanism of the car within the meaning of section 64 of the Railroad Law. (Cons. Laws, ch. 49, § 64.) Plaintiff assumed the risks incident to the use of the defective brake, if it was defective as he claims. (*O' Neil* v. *Karr*, 115 App. Div. 881; 190 N. Y. 509; *Bushtis* v. *Catskill Cement Co.*, 128 App. Div. 780; 198 N. Y. 548; *Collelli* v. *Turner*, 154 App. Div. 218; 215 N. Y. 675; *Curran* v. *Man. R. Co.*, 118 App. Div. 347; *Keating* v. *Coon*, 102 App. Div. 112; *Anderson* v. *Milliken*, 123 App. Div. 614; 194 N. Y. 521; *Knisley* v. *Pratt*, 148 N. Y. 372; *Maltbie* v. *Belden*, 167 N. Y. 307; *Crown* v. *Orr*, 140 N. Y. 541; *Dowd* v. *N. Y., Ont. & Western R. R.*, 170 N. Y. 459; *Dixon* v. *N. Y., Ont. & Western R. R.*, 198 N. Y. 58; *Scott* v. *D., L. & W. R. R. Co.*, 136 App. Div. 347; 148 App. Div. 697; *Gorman* v. *Milliken*, 142 App. Div. 207; *Reinertsen* v. *Erie R. R. Co.*, 142 App. Div. 31; 205 N. Y. 541.)

CARDOZO, J. The plaintiff was a motorman in the defendant's service. There is evidence that there was a defect in the air brake of his car. He found that the automatic pump began to work after two applications of the brake. Normally it did not begin to work till there had been from six to ten applications. This difference meant that there was a leakage of air. The pump starts automatically when the pressure in the air chamber falls below forty pounds, and stops when the pressure rises to sixty. Its power is supplied by the electric current from the overhead wire. When the trolley pole is removed from the wire, the power is cut off. With the pump no longer working, there is nothing to correct the leakage. If the leak is a large one, the brake is quickly loosened.

On the day of the accident, the plaintiff had gone about thirty blocks, when he was told to transfer his passengers to a car ahead. He set his air brake in the emergency position, which, if all had been in order, would have

kept the car stationary. He then left his own car, and in obedience to a command of the inspector to "hurry up and open up the line," he proceeded to adjust the pole of the car ahead. The space between the two cars was only five feet. While the plaintiff's back was turned, his own conductor pulled the pole of his car from the trolley wire, and cut off the power from the pump. He did this, as he says, thoughtlessly, intending to reverse the car and "not thinking at the time that we had not cleared the cross-over." Almost immediately the brake loosened, the car slid forward on a down grade, and the plaintiff was crushed between the bumpers. Not more than four minutes elapsed between the time when the plaintiff left the car and the time when he was crushed. There is testimony that the short interval is a token that the leak was a large one.

In these circumstances, the plaintiff relies upon section 64 of the Railroad Law (Consol. Laws, ch. 49). He insists that under that statute the defect in the brake is *prima facie* evidence of negligence. The defendant insists, and the courts below have held, that there must also be evidence that reasonable inspection would have disclosed the defect. This leak may have started after the car left the barn. The plaintiff, we are told, should have proved that it was there when the trip began. But even that evidence, it is said, would be inadequate; there should be evidence also of the tests that ought to have been applied. To say with the plaintiff's expert that inspection will reveal the defect is not enough; the kind of inspection must be described, and the tests must be proved to be reasonable and usual. That has been the argument and the ruling.

We think the statute has been misread. Let us recall its language. Its opening words tell us that in all actions against a railroad corporation doing business in this state, or against a receiver thereof, the injured employee

or his representatives shall have the same rights and remedies "now allowed by law," and "in addition to the liability now existing by law," the rights and remedies which are then defined. We are dealing, therefore, with something more than a declaratory enactment. The section goes on to describe the persons who shall thereafter be deemed vice-principals, and not fellow-servants, of an injured employee. It then provides: "If an employee, engaged in the service of any such railroad corporation, or of a receiver thereof, shall receive any injury by reason of any defect in the condition of the ways, works, machinery, plant, tools or implements, or of any car, train, locomotive or attachment thereto belonging, owned or operated, or being run and operated by such corporation or receiver, when such defect could have been discovered by such corporation or receiver, by reasonable and proper care, tests or inspection, such corporation or receiver shall be deemed to have had knowledge of such defect before and at the time such injury is sustained; and when the fact of such defect shall be proved upon the trial of any action in the courts of this state, brought by such employee or his legal representatives, against any such railroad corporation or receiver, on account of such injuries so received, the same shall be *prima facie* evidence of negligence on the part of such corporation or receiver."

This statute, aside from its modification of the fellow-servant rule, does two things. When a defect exists, and knowledge of "such defect" could have been obtained by reasonable care and inspection, the corporation is declared to be chargeable with knowledge. It is deemed to have known what it ought to have known. It cannot escape the imputation of knowledge by delegating to others the performance of its duty. That is the first rule which the statute declares. But the lawmakers were aware that the injured servant is often at a dis-

advantage in a contest with the employing corporation. In many cases he cannot know the origin of the defect or the term of its duration. The railroad company, on the other hand, is in a position to know these things, for it has the possession and control which give the opportunity for knowledge. To escape the hardship of the old rule, a new presumption has been established. When the fact of " such defect," *i. e.*, a defect in the condition of the ways, works, etc., has been proved, " the same shall be *prima facie* evidence of negligence." The plaintiff in the first instance may rest on this presumption. To say that he must also prove as part of his *prima facie* case that the defect arose at a time and under conditions when reasonable inspection would have revealed it, is to make the statute useless. Something which is not in the statute is read into it by construction, and this not to promote, but to defeat its purpose. The legislature did not mean to spread upon the books a futile enactment. It was righting a wrong, and prescribing a fitting remedy.

Our present ruling is in accord with our decision in *Kent* v. *Erie R. R. Co.* (217 N. Y. 349). There an employee was injured through a defective grab-iron. He made no attempt to prove how long the defect had existed. We applied the statutory presumption, and sustained his cause of action. The presumption, of course, is not conclusive. It is a presumption, and nothing more. The employer may meet it by counter-evidence. He may show that the defect was not discoverable through reasonable care, and hence that there was no negligence. In these and perhaps in other ways, he may repel the adverse inference. There was no attempt to repel it here.

The argument is made that the defect in the brake was not the proximate cause of the accident which followed. The defect, it is said, would have been harm-

less if the pump had not ceased to work, and the pump would not have ceased to work if the conductor had not removed the pole. But those were arguments for the jury. It was for them to say whether the defect portended danger as a probable result. " It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye " (*Munsey* v. *Webb*, 231 U. S. 150, 156; *Condran* v. *Park & Tilford*, 213 N. Y. 341, 345; *Meisle* v. *N. Y. C. & H. R. R. R. Co.*, 219 N. Y. 317, 320). There are times when a trolley pole has to be moved. This the defendant knew. If the brakes are defective, the car will then go forward. Whoever happens to be near is likely to be hurt. We cannot say as a matter of law that the danger is so remote or trivial that the employer may disregard it. If the defendant knew that the pump was a safety device designed to counteract the leak, it knew also that there were times when the power would be cut off, and the device would cease to operate. The accident which befell the plaintiff shows what might be expected then to happen. Whether the expectation of danger was within the range of prudent forethought, was a question for the jury (*Perry* v. *Rochester Lime Co.*, 219 N. Y. 60, 63).

The argument is also made that the plaintiff assumed the risk. The case was not tried under the Labor Law (Consol. Laws, ch. 31, sec. 202; *Maloney* v. *Cunard S. S. Co.*, 217 N. Y. 278). It is governed, therefore, by the rule at common law (*Collelli* v. *Turner*, 215 N. Y. 675). But even under that rule, the question was one of fact. The plaintiff noticed that the pump began to work after two applications instead of the usual six applications or even ten. Not infrequently, however, he had noticed the same thing on other cars, and no harm had come to him. We cannot say as a matter of law that he

appreciated the danger, and that it became his duty, midway upon the trip, to stop the car and abandon it. A jury must say whether the risk was so obvious or so imminent as to cast that duty upon him. He may have known that there was a defect, but it does not follow that he knew the danger (*Welle* v. *Celluloid Co.*, 175 N. Y. 401, 405; *Davidson* v. *Cornell*, 132 N. Y. 228). It is not " the obviousness of the physical situation or condition " which makes out a defense; it is " the obviousness of the dangers which the physical condition or situation produces " (*Rogers* v. *Roe & Conover*, 74 N. J. L. 615, 617; *Yarmouth* v. *France*, 19 Q. B. D. 647, 658, 661; *Smith* v. *Baker*, 1891 A. C. 325, 361, 362).

The judgment should be reversed, and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., COLLIN, CUDDEBACK, POUND, CRANE and ANDREWS, JJ., concur.

Judgment reversed, etc.