ANNA DE GAETANO, as Administratrix, etc., of JAMES DE GAETANO, Deceased, Respondent, *v.* MERRITT & CHAPMAN DERRICK AND WRECKING COMPANY, Appellant.

First Department, February 4, 1927.

Negligence — action to recover for death of plaintiff's intestate who was killed while at work as professional diver — apparatus became caught so that air was shut off — intestate assumed risk of absence of another diver — evidence does not show sufficient protrusion of loose wires at end of cable to cause result claimed.

Action to recover for the death of plaintiff's intestate, who was killed while at work as a diver by the shutting off of air when the apparatus became caught. The intestate assumed the risk of the absence of an experienced diver to be used in emergency, since he knew, when he made the descent, that no diver was in attendance.

The record does not show that loose wires protruding from the end of the cable protruded to such an extent as to have caused the entanglement of the apparatus and the shutting off of air.

MERRELL, J., dissents, with opinion.

APPEAL by the defendant, Merritt & Chapman Derrick and Wrecking Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 10th day of April, 1925, upon the verdict of a jury for $35,000, and also from an order entered in said clerk's office on the 16th day of April, 1925, denying defendant's motion for a new trial made upon the minutes.

*William J. Martin* of counsel [*George F. Hickey* and *Patrick J. Dobson* with him on the brief; *Frederick Mellor*, attorney], for the appellant.

*Theodore Kiendel* of counsel [*Sol Gelb* with him on the brief; *John R. Bushong*, attorney], for the respondent.

PER CURIAM.   The respondent urges only two claims of negligence to sustain the verdict: neglect to provide a second diver in attendance, and neglect properly to protect the end of the cable.

The decedent was aware that no other diver was in attendance. An experienced diver himself, he had peculiar knowledge of any risk incident to this omission.   He, therefore, assumed this risk.

The record is bare of any evidence that loose wires dangerously protruded from the end of the cable.   The witness alone relied on by respondent testified that while there were loose ends of wire, he did not know whether they stuck out several inches.   This extent of protrusion was necessary to the plaintiff's case.   His testimony in this respect is completely overborne by the testimony of defendant's witnesses and the photograph showing the manner in which the end of the cable was protected.

The judgment appealed from should be reversed, with costs, on the law and the facts, and the complaint dismissed, with costs.

Present — DOWLING, P. J., MERRELL, FINCH, McAVOY and PROSKAUER, JJ.; MERRELL, J., dissents.

MERRELL, J. (dissenting).   I am of the opinion that the jury, upon the evidence, was justified in rendering a verdict for the plaintiff.   The evidence was sufficient to show defendant's negligence in two particulars: *First*, in failing to properly tape or solder the ends of the wires shown to have protruded from the basket-work on the end of the cable, making the end of the cable smooth, in accordance with the proven safe and usual practice; and *second*, in failing to have, in accordance with the proven usual and proper practice, a diver at hand, dressed and equipped, to speedily go to the relief of a diver in trouble.

As to the first mentioned negligence, the witness Mayfield, a diver in defendant's employ and who first found the body of plaintiff's intestate, testified that he felt the end of the cable engaged with the grappling device made up of a quantity of wires about one-eighth of an inch in diameter and found a lot of loose ends of these wires sticking out in different directions from the cable. Mayfield also testified that the wire contrivance extended back from the end of the cable approximately two or three feet, and that the cable extended into the crib about the same distance — the wired part extending back to the rail of the bulkhead, and that the cable had caught and was pressed taut, catching and pressing the air hose against the timber of the crib.   While it is true, as stated in the prevailing opinion, that defendant's employee May-

field did not know whether the loose ends of the wires stuck out several inches, he did testify that a lot of loose wire ends stuck out. I do not agree with the statement in the prevailing opinion, that it was necessary for the plaintiff to show the extent of the protrusion. Upon all the evidence in the case the inference is permissible that the loose wire ends caught the air hose and bound it against the crib, thus shutting off from plaintiff's intestate his air supply. Plaintiff's witnesses Nystrom and Tobey, both professional divers with experience in laying cables, testified that the customary and safe practice is to tape or solder the loose ends of the wires attached to the end of the cable so as to make ·a smooth surface. Nystrom testified that such wrapping was put about the wires for the " safety for the diver for not being tangled up on these ends of the wire," and that if not so wrapped the hauling was " liable to take your hose or life line in certain conditions and pull you into the crib or some place else," and that when the air hose " is jammed you get no air." Defendant's witness Jacobsen, in defendant's employ near the place of the accident, testified that it was good practice to put rubber tape around the ends of the wires forming the " basket " put about the cable for hauling purposes, and that the reason for taping is to keep the wires from sticking out and so they will not catch on different objects. No attempt was made by the defendant to show that such customary and safe practice of soldering or taping the protruding wires was observed on the cable in question. The photograph referred to in the prevailing opinion was not of the cable being placed when the air hose of plaintiff's intestate was caught. I am, therefore, of the opinion that the jury was justified in finding the defendant negligent in failing to adopt the customary and safe method of covering the loose wire ends, and that the proximate cause of the death of plaintiff's intestate was the catching of his air hose upon the protruding wires near the end of the cable and jamming it against the timbers of the crib, thus shutting off his air supply.

Plaintiff also presented testimony of witnesses that it was a safe practice to always have a diver at hand, dressed and in readiness to go to the assistance of a diver in trouble. The defendant's proofs disputed that there was such a custom, although one of defendant's witnesses admitted that such was the practice in deep water diving on the· St. Lawrence river. The jury was justified in believing plaintiff's witnesses in this respect. The testimony of all the witnesses was in practical accord that where a diver's air is shut off from two to three minutes, death results. The necessity, therefore, would seem apparent that where the air of the diver is shut off, as the helper of plaintiff's intestate knew was the case

of his diver, to act with the utmost promptness and to render prompt assistance to the diver. Common prudence should have prompted the defendant to have an extra diver at all times ready to go to the relief of a diver in trouble. What occurred in this case demonstrates such necessity. As soon as the helper realized plaintiff's intestate was in trouble, the diver of the defendant in the middle of the river and the diver on the Manhattan side were both frantically summoned, but it was some fifteen minutes before either diver was able to render any assistance, and then it was too late.

Nor do I think it can be said as matter of law that plaintiff's intestate assumed the risks of his employment. The record is barren of any evidence that the deceased ever saw the end of the cable or any of the wire ends protruding therefrom. Not knowing that defendant had failed to adopt the customary and safe method of soldering or taping the wires about the end of the cable, he cannot be said to have assumed the risk arising from his employer's negligence in this respect. Nor does the evidence show that the decedent knew that his employer would not have some one equipped for diving within less than 150 feet, who could go to his assistance if in trouble. In any event, the question of assumption of risk was properly left to the jury. As was said by the Court of Appeals in *Larson* v. *Nassau Elec. R. R. Co.* (223 N. Y. 14, 21): " A jury must say whether the risk was so obvious or so imminent as to cast that duty upon him. He may have known that there was a defect, but it does not follow that he knew the danger (*Welle* v. *Celluloid Co.,* 175 N. Y. 401, 405; *Davidson* v. *Cornell,* 132 N. Y. 228). It is not ' the obviousness of the physical situation or condition ' which makes out a defense; it is ' the obviousness of the dangers which the physical condition or situation produces ' * * *." Even had the deceased in the case at bar known, from past experience, of his employer's failure to have an extra diver at hand, it does not appear that he had any knowledge of the failure of his employer to safely cover the wires about the end of the cable.

I am, therefore, of the opinion that the evidence justified the jury returning a verdict for the plaintiff in some amount. I am inclined to regard the verdict as rather excessive, and would vote to reduce the same. I, therefore, dissent from the decision of my associates, and vote to affirm the judgment and order appealed from.

Judgment and order reversed, with costs, and complaint dismissed, with costs.