MALCOLM HOOD, JR. et ux., MRS. CHRISTINE H. HOOD, Plaintiffs-in-Error, v. MRS. LULA PEARL WALDRUM, Defendant-in-Error.

MALCOLM HOOD, JR. et ux., MRS. CHRISTINE H. HOOD, Plaintiffs-in-Error, v. R. C. WALDRUM, Defendant-in-Error. —434 S.W.(2d) 94.

Middle Section. March 29, 1968.

Certiorari Denied November 4, 1968.

514

Jerry Colley and Billy C. Jack, Columbia, for plaintiffs in error.

Hugh T. Shelton, Jr. and T. Edward Lawwell, Columbia, for defendants in error.

TODD, J. In these consolidated cases Malcolm Hood, Jr., and Christine Hood, defendants, have appealed in error from separate verdicts and judgments in favor of plaintiffs, R. C. Waldrum and Mrs. Lula Waldrum, for damages resulting from an alleged attack upon Mrs. Waldrum by defendants' dog.

The salient facts are uncontroverted. The defendants are husband and wife. They reside in a semi-rural situation in which three homes are grouped in close proximity with no other houses in "hollering distance". For about

nine years, the defendants have owned a large dog, which is kept as a pet and, to some degree, for protection. About 1962, he allegedly "snapped" at the ankle of a neighbor's child. In 1963, he allegedly bit an electric meter reader on the hand. There is no other evidence of violent or mischievous conduct on the part of the dog, in fact, he is pictured by defendants as a harmless pet. Defendants did maintain two "bad dog" signs in their yard, but they insist that it was to keep salesmen away. Defendants did customarily keep the dog tied, but they insist that this was because he had "run off" and had been shot on a previous occasion.

The plaintiff, Mrs. Waldrum, is a dealer in cosmetics and walks from door to door selling her wares. Once previously she called upon Mrs. Hood who responded that she was not interested in plaintiff's cosmetics. Plaintiff had seen the "bad dog" signs several times and had previously seen the dog, himself, a large heavy animal, tied up. Plaintiff had been warned by Mrs. Hood's mother who lived next door that defendants had a "bad dog".

On the day of the injury plaintiff knocked on defendant's front door without response. She then went to a side door and knocked without response. As she left the side door she saw Mrs. Hood in the back yard washing a trash can with a garden hose and called to her. Defendant's dog then came from behind the house and leaped toward her. She either fell or was knocked to the ground. The dog made no attempt to bite or otherwise injure her. She suffered a broken leg, resulting in the pain, disability and expenses for which the two plaintiffs brought their respective suits.

As originally filed the declarations alleged negligence in allowing an animal with known vicious propensities to

run loose and in allowing said animal to attack plaintiff. To this declaration a general issue plea was filed.

On the first day of the trial after the jury had been selected and sworn and over objection of defendants, the plaintiffs were permitted to amend their respective declarations by adding second counts identical in substance. The pertinent portion of Mr. Waldrum's amendment is:

"That at the time and place aforesaid the defendants were the owners of said dog, had knowledge that said dog was of vicious propensities and yet allowed said dog to be loose and not restrained, and therefore, said defendants are liable to the plaintiff for the damages which he received resulting from the injuries to his wife caused by the attack described in this declaration."

At the conclusion of the trial the jury announced verdicts in favor of the plaintiffs "on the second count only" and further reported, "we decided that the Hoods were not guilty of negligence and therefore we should disregard the First Count." Pursuant to said verdicts, judgments were entered in favor of plaintiffs upon the second counts of their declarations, and in both cases the first counts were dismissed.

The first assignment of error is:

"The Trial Court erred in charging the jury that under the factual situation presented in these cases, the doctrine of assumption of risk, as a matter of law, did not apply, because in giving such instruction, the Judge invaded the fact-finding province of the jury since there was material evidence from which the jury could find that the Plaintiff, Mrs. Waldrum, deliberately exposed

herself to the danger and thereby assumed the risks incident thereto.''

The portion of the charge complained of is as follows:

''Now there has been something said about this doctrine of assumption of risk as it might apply to the Second Count of the declaration and you could visualize a factual situation where the doctrine of assumption of risk would apply, that is if the injured person had full knowledge of the dangerous propensities of the animal or the injured person intentionally or on purpose or unnecessarily put himself in the way of the animal or the dog, then there would be an assumption of risk so as to bar a recovery, can't be absurd about these things if a person knew of the dangerous situation, had personal knowledge of it or aggravated the animal or put his hand in a cage where a snake was or went in a cage with a vicious dog or something of that kind, certainly there would be an assumption of risk though as would bar a recovery even under the Second Count of the declaration, but I'm instructing the Jury in this case that under the factual situation as presented here to us that this doctrine of the assumption of the risk on the part of the plaintiff and the plaintiffs in these cases does not apply. The proof does not show or justify an inference that this lady knowingly placed herself in a position of danger, the theory, the insistence of the defendants, one theory is that this animal was not dangerous, so I'm instructing the Jury as a matter of law that this doctrine of the assumption of the risk does not apply to the factual situation of this case, that is under the Second Count of the declaration.''

Superficially the first assignment presents only the question of whether there was evidence upon which

reasonable minds might agree that plaintiff "voluntarily assumed the risk of injury." This question will be first considered in the light of the physical situation, information received by the plaintiff, and her actions on the day of her injury.

Pictures included in the record portray a modest home situated on a hillside above the road so that it was necessary for visitors to walk uphill along a driveway to reach the house. At the entrance to the driveway was a sign bearing the words "bad dog". The drive approached and passed the house on the lower side of the lot, so that in leaving the drive and approaching the house it was necessary for a visitor to walk uphill across the lawn. The uphill grade continued to the opposite end of the house where another "bad dog" sign was placed for the benefit of visitors who might enter the premises from an adjoining neighbor's premises. There were four entrances to the house, one on each end and one front and back.

Having been warned by a neighbor that defendants had a "bad dog", and having seen one of the "bad dog" signs on the day of injury and previous occasions, plaintiff proceeded to the front door of defendant's home. Receiving no response at this door, she proceeded to the door on the upper, or west end of the house, farthest from the drive, and there knocked again without response. Plaintiff insists that she did not go any nearer the back yard than this latter door, however the physical facts would tend to corroborate defendant's testimony that plaintiff came around the back corner of the house. The latter "side" door is near the front corner of the house, so that a person at or near said door would be able to see very little of the back yard. It would be necessary for a person to proceed from the side door to, or almost to the

rear corner of the house in order to see most of the back yard.

From the foregoing evidence the jury could reasonably have found that the plaintiff voluntarily assumed the risk of the injury she received.

Contributory negligence and assumption of risk are generally issues of fact for the jury. Miller v. Chattanooga Auto Parts, Inc. 350 F.2d 851 (6 Cir., 1965). Kendall Oil Co. v. Payne, 41 Tenn.App. 201, 293 S.W.2d 40 (1955).

Where the evidence is in conflict or where different conclusions might reasonably be drawn therefrom, questions of negligence, ordinary care and proximate cause are for the jury. Management Services, Inc. v. Hellman, 40 Tenn.App. 127, 289 S.W.2d 711 (1955).

Only where but one conclusion can reasonably be reached from the evidence and inferences is it proper for the trial court to direct a verdict. *ibid.*

The first assignment of error is sustained.

Inasmuch as a further trial will be necessary, it is deemed proper to examine in depth the proper rules applicable to cases of this type. A review of the myriad decisions on injury by dogs reveals the wide diversity and uncertainty of authority and the need for a clear statement of the proper rules applicable to the liability of dog owners.

It is hornbook tort law that all behavior of parties to a lawsuit falls into one of three general categories. The actions of a defendant or a plaintiff may be classified according to the circumstances as (1) no negligence (2) ordinary negligence, or (3) gross negligence. Some

authorities recognize further classifications designated as "wilful or wanton conduct", "intentional injury", or "maintenance of an absolute nuisance"; and some liability is created by statute; but each of these special classifications may be grouped with one or more of the three fundamental classes for the purposes of this discussion.

It is equally accepted, in this jurisdiction at least, that (pretermitting degree of causal effect) the three classifications of a party's actions have the following effect in the ordinary tort case:

■ (1) A defendant guilty of no negligence cannot be held liable.

■ (2) A defendant guilty of ordinary negligence can be held liable, unless

(3) The plaintiff is also guilty of ordinary negligence, which will prevent recovery for defendant's ordinary negligence, but

■ (4) A defendant guilty of gross negligence may be held liable in spite of ordinary negligence of the plaintiff, Alabama Highway Express, Inc. v. Luster, 51 Tenn.App. 691, 371 S.W.2d 182 (1963), however:

■ (5) Ordinary negligence of plaintiff will mitigate damages for defendant's gross negligence, Hemmer v. Tenn. Electric Power Co., 24 Tenn.App. 42 (1940), 139 S.W.2d 698, and

■ (6) If plaintiff's negligence was also gross, defendant is not liable for even gross negligence. Brown v. Barber, 26 Tenn.App. 534, 174 S.W.2d 298 (1943).

Before undertaking to analyze the liability of dog owners in the light of the foregoing fundamentals, it is well to recognize that the courts are at great variance regarding the gravamen of actions against dog owners. In 66 A.L.R.2d at page 919 is found a very enlightening introduction to the article on this subject, which contains the following:

"The principle that contributory negligence is not available as a defense except to an action grounded on negligence has also been applied in suits brought under the theory of liability based on scienter. However, in this area some difficulty has been encountered in determining the nature of the action (whether, for example, the gist of the action is negligence, wilful negligence, nuisance, or absolute liability), and the problem is complicated by the reluctance of some courts to deprive the harborer of a dog of this important defense." 66 A.L.R.2d at 920.

In Corpus Juris Secundum, an analysis of the theories of liability of dog owners concludes with the following:

"In any event, whether or not the action may, strictly speaking, be said to be founded on negligence, it partakes of many of the characteristics of a negligence action." 3 C.J.S. Animals sec. 146, p. 1248.

There is no reason why the above mentioned fundamentals of tort law should not apply to dog owners and those injured by dogs as effectively as they apply to any other area of life. Indeed, all of the well reasoned opinions, if rationally analyzed and interpreted, fit naturally into the framework of the fundamentals of tort law. Under these fundamentals, (pretermitting degree of

causal effect) the following principles should apply to the common law liability of dog owners:

█ (1) A dog owner who has no reason whatever to expect any mischief from his dog ordinarily is not negligent and not liable for the first mischief which occurs.

█ (2) The occurrence of mischief, or any other pertinent circumstance, creates a duty upon the owner to exercise ordinary care in keeping with the events or circumstances which have occurred. His failure to exercise ordinary care in this situation is ordinary negligence, for which he may be held liable, unless

(3) The injured party failed to exercise ordinary care under the circumstances, in which event the injured party is guilty of ordinary negligence and cannot recover for ordinary negligence of the dog owner, but

█ (4) If the dog has exhibited such a fixed or customary or characteristic disposition as to be classified as a dangerous or ferocious dog, then the owner may be guilty of gross or wilful negligence by the mere act of harboring such a dangerous animal upon his premises without adequate safeguards. In such event the owner could be held liable for injury notwithstanding the ordinary negligence of the injured party, however,

█ (5) Ordinary negligence of the injured party will mitigate damages for the owner's gross negligence, and

█ (6) If the injured party's negligence was gross or wilful, such as voluntary assumption of a known risk, then the dog owner may not be liable even for gross negligence.

We find no conflict between the foregoing principles and the Tennessee cases.

In the early case of Sherfey v. Bartley, 36 Tenn. 58, the Trial Court instructed the jury as follows:

"In order to recover in this case, the plaintiff must prove the injury complained of; that defendant's dog was *of vicious habits, accustomed to bite,* and that defendant had knowledge of this fact before the injury complained of, and, with such knowledge, permitted his dog to run at large. That if, at the time the injury complained of, the plaintiff Phoebe Bartley was in the field of the defendant gathering berries, she would in law be a trespasser; and, upon a suit being instituted, the defendant would be entitled to recover damage for such trespass; but the fact that the plaintiff was in the field of the defendant at the time she was bitten by the dog would be no defense to the present suit, *if the proof showed that the defendant's dog was vicious—accustomed to bite or attack people*—and that defendant had knowledge of this fact before the injury in this case occurred, and, with such knowledge, permitted his dog to run at large." 36 Tenn. at 22 and 23 (emphasis supplied)

It is noteworthy that the charge depriving defendant of the defense of ordinary contributory negligence (trespass) was conditioned upon a finding that the dog was *"vicious—accustomed to bite or attack people—",* and that the sole act of contributory negligence was trespass —without previous knowledge or warning of a dangerous dog at large.

In Missio v. Williams, 129 Tenn. 504, 167 S.W. 473, L.R.A.1915A, 500 (1914), two bull dogs were known by

defendants to be dangerous and were kept for that reason. The dogs rushed out of the yard and attacked plaintiff on the public street. There was no question of contributory negligence at all, hence no occasion to distinguish between ordinary or gross negligence on the part of the defendants. The trial court found defendants liable on the facts, and the Supreme Court affirmed.

In Goens v. Jones, 1 Tenn.App. 294 (1925) the only questions before the Court on appeal were whether the plaintiff was a trespasser and whether defendant had knowledge of a vicious disposition. The Court held that there was evidence in the record to support a verdict for plaintiff on both questions. This opinion contains a most entertaining and edifying discussion of the problems of dogs and their owners which is recommended for light as well as studious reading.

In Brown v. Barber, 26 Tenn.App. 534, 174 S.W.2d 298 (1943) a jury verdict for the defendant was affirmed. The error of the trial judge in ruling plaintiff to be an invitee was therefore harmless. It was insisted in the Brown case that the keeping of a vicious dog was *an absolute nuisance*, subjecting the owner to responsibility of an insurer. In rejecting this contention, the Court said:

"The law does recognize the distinction between the maintenance of a condition which is unlawful and inherently dangerous to others, however much care may be exercised, and a condition rendered wrongful and dangerous only by reason of negligence. In the latter class of cases, contributory negligence bars a recovery, whereas, generally, to be available as a good defense in the former, the conduct of the injured person must have been tantamount to an indifference to conse-

quences. This, upon the principle of volenti non fit injuria. The distinction is discussed at length in an opinion by Cardozo, C. J., in the case of McFarlane v. Niagara Falls, 247 N.Y. 340, 160 N.E. 391, 393, 57 A.L.R. 1.

"But the rule imposing liability for the maintenance of an 'absolute nuisance' there elucidated does not go as far as the plaintiff seems to think. In holding that the nuisance involved in that case arose by reason of negligence of the defendant and hence was not absolute, the court said: 'In thus limiting our ruling, we are not to be understood as holding by implication that where the nuisance is absolute, the negligence of the traveler is a fact of no account.'

"After supporting this view by a reference to a leading English case, and saying that the breadth of its pronouncement should likely be restricted, as indicated by certain New York cases defining liability for a particular kind of nuisance, the harboring of vicious animals, the court continues: 'In nuisance of that order, the fault that bars recovery is fault so extreme as to be equivalent to invitation of injury or, at least, indifference to consequences. Here is a borderland where the concept of contributory negligence merges almost imperceptibly into that of acceptance of a risk. Bohlen [Studies in the Law of Torts], supra, p. 500; Warren, Volenti non fit injuria, 8 Harvard L.R. 457, 459, 461. Very often the difference is chiefly one of terminology. In strictness, however, to make out acceptance of the risk there must be foresight of the consequences. Smith v. Baker [1891], A.C. 325, 337, 355; Larson v. Nassau Electric R. Co., 223 N.Y. 14, 119 N.E. 92; Warren, supra. Behavior so reckless as to indicate

indifference to peril on the part of a person of normal understanding may turn out in a given instance to be only contributory negligence, as where a drunken man, unable to measure the risk, drives madly through a crowded street. We have never yet held that fault so extreme can coexist with a right of action for damages, however absolute the nuisance.' See, also Hoffman v. City of Bristol, 113 Conn. 386, 155 A. 499, 75 A.L.R. 1191.

"Though it may be that theoretically, somewhat different concepts are involved, the rationale of this conclusion is the same as that supporting the rule in this jurisdiction that, while mere ordinary contributory negligence will not operate to bar a recovery in an action founded on *gross negligence,* yet *where the contributory negligence also is gross* instead of ordinary, *there is no liability.* Consolidated Coach Co. v. McCord, 171 Tenn. 253, 102 S.W.2d 53; Southern R. Co. v. Whaley, 170 Tenn. 668, 98 S.W.2d 1061; Lowry v. Southern R. Co., 117 Tenn. 507, 101 S.W. 1157." (Emphasis supplied)

In Henry v. Roach, 41 Tenn.App. 289, 293 S.W.2d 480 (1956) a directed verdict for defendant was reversed because:

"There was material evidence of ownership, dangerous proclivities, and scienter."

and the case was remanded for trial to a jury.

All relevant Tennessee cases on the subject having been surveyed, it is deemed unnecessary to review any of the many cases from other jurisdictions. Suffice it is to say that, when examined in the light of the general prin-

ciples enunciated supra, the facts peculiar to each case, and the results reached, none are grossly inconsistent with the holding herein.

The said general principles leave adequate flexibility for an intelligent jury to evaluate the conduct of both parties in the light of all surrounding circumstances, including the habits and customs of the community in regard to dogs and the nature of the community, whether urban or rural, crowded or spacious, residential, industrial, commercial or other. After all, a jury of twelve citizens, drawn from the general public of the court's jurisdiction and instructed in the applicable law, is the best judge of the conduct of the parties.

From an examination of that portion of the charge heretofore quoted, and the entire charge, we are of the opinion that the jury rendered its verdict for the plaintiffs upon an erroneous understanding of law, to wit, that evidence of one or two bites in nine years conclusively shows a dog to be so vicious and ferocious that his owner is thereafter unconditionally liable for his dog's conduct unless the victim is as reckless as one who thrusts his hand into a snake pit, and that they were not at liberty under the evidence to find the plaintiff guilty of such voluntary exposure to peril (gross negligence) as would bar her recovery.

The jury should have been left free to find that the dog was or was not of such a ferocious character or disposition that the mere keeping of him rendered his master liable in spite of contributory negligence. The jury should further have been left free to evaluate the conduct of plaintiff as being (a) no negligence at all, or (b) ordinary negligence, or (c) gross negligence (voluntary assumption of risk).

The second assignment of error complains of refusal of Defendant's Special Instruction No. 4 as follows:

"You are further instructed that where one intentionally or unreasonably puts himself or remains within the reach of a vicious dog, knowing it to be dangerous, and is attacked by the dog, he is barred from recovering for his injuries from the owner or harborer of the dog."

In the case of Brown v. Barber, supra, plaintiff went to an area of a public garage to which he was not invited; and, in spite of a large sign, the warning of bystanders, and the loud barking of a chained dog, plaintiff proceeded to the vicinity of the dog and was bitten. The Court of Appeals said:

"In the present case, there is no escape from the conclusion that the plaintiff's conduct evidenced a *reckless indifference to consequences that was tantamount to an invitation to injury*". 26 Tenn.App. 541, 174 S.W.2d 298.

In the case now on appeal, the conduct of the plaintiff was not so *patently* reckless as in the Barber case, however, the question of negligence of plaintiff and whether it extended to the degree of "reckless indifference to consequences etc." was for the jury to decide under all the facts and circumstances of the case.

We cannot approve the special request No. 4 or sustain the assignment of error based thereon because the request did not accurately and completely state the principle of law. The defendants were entitled to have the jury charged in general terms in accordance with the holding of Brown v. Barber, supra.

The third assignment of error complains of failure to charge Defendant's Special Instruction No. 5 as follows:

"You are further instructed that if the Plaintiff saw or ought to have seen the 'bad dog' sign and did not use the ordinary precaution which such a sign indicated, she cannot recover."

This assignment cannot be sustained because the instruction likewise does not fully and accurately state the law. The instruction refers to use of "ordinary precaution", the absence of which would usually be "ordinary negligence", which, as has already been shown, is available as an absolute defense only in cases of ordinary negligence on the part of the defendant.

Defendant's fourth assignment of error complains of refusal of Defendant's Special Instruction No. 6, as follows:

"I further charge you that if you find from the evidence and law that the Plaintiff had a privilege to go upon the premises of the Defendants, this privilege was limited and extended only to such parts of the premises to which such persons as the Plaintiff were expected to go and not to the Defendant's entire premises. If you find from the evidence that the Plaintiff exceeded this privilege and went upon portions of the Defendants' premises which she had no right or privilege to be, the privilege was revoked, and she became a trespasser to whom the Defendants owed no duty except to refrain from wilfully, wantonly or intentionally causing injury."

We are unable to approve this instruction because it does not fully and accurately state the law. The authorities cited and examined state that one who exceeds

the bounds of actual or implied invitation ceases to be an invitee and thereby becomes *either a licensee or a trespasser* to whom the plaintiff owes no duty except to refrain from *wilful, wanton, or intentional injury.* Although the authorities make no distinction between the duty owed to a licensee or trespasser, the actions of a licensee or trespasser would be subject to different evaluation as to contributory negligence or voluntary assumption of risk. That is, the jury would be entitled to consider whether the plaintiff was a licensee or trespasser, along with all other facts and circumstances, in making a determination of whether plaintiff was ordinarily negligent or grossly negligent. See 65A C.J.S. Negligence sec. 128, p. 91.

 Whether plaintiff was an invitee, a licensee, (or trespasser) is a question for the jury. American National Bank v. Wolfe, 22 Tenn.App. 642, 125 S.W.2d 193 (1939).

Defendant's fourth assignment of error is respectfully overruled.

 Defendant's fifth and last assignment of error complains that the Trial Court erred in refusing directed verdicts. No such error was included in the Motions for a New Trial. This assignment therefore cannot be considered. Rules of Court of Appeals, rule 12(5). F. W. Woolworth Co. v. Conners, 142 Tenn. 678, 222 S.W. 1053 (1919), and many other cases annotated in Vol. 2, Tenn. Digest, Appeal and Error, Sec. 301.

 The fifth assignment cannot be sustained for the further reason that no motion for a directed verdict was made by defendants at the conclusion of all the evidence. Mitchell v. Ketner, 54 Tenn.App. 660, 393 S.W.2d 755

(1964); Sadler v. Draper, 46 Tenn.App. 1, 326 S.W.2d 148 (1959).

In view of our ruling upon defendant's first assignment of error, the cause must be remanded for trial anew upon the second count of the declaration. The result of the first trial represents an anomalous situation wherein a jury has found defendants innocent of negligence, and yet has rendered a verdict which must be based upon gross negligence or its equivalent. Nevertheless, the first count having been rejected by the jury, and that verdict and judgment thereon now being final, only the second count remains for consideration.

It is hoped that the research incident to the preparation of briefs, and the principles pointed out in this opinion will be helpful to counsel and the court upon retrial of the cause.

Costs of this appeal are taxed against the plaintiffs.

Reversed and remanded.

Shriver, P. J., and Puryear, J., concurs.