BROWN v. BARBER et al.—174 S. W. (2d) 298.

Western Section.    February 26, 1943.

Petition for Certiorari denied by Supreme Court, July 3, 1943.

Mary Guidi, of Memphis, for plaintiff in error.

W. H. Fisher, of Memphis, for defendants in error.

ANDERSON, P. J. The original plaintiff Brown instituted this action to recover damages for personal injuries alleged to have been sustained when he was bitten by a dog owned by the defendant. Upon a trial before the judge without a jury, the suit was dismissed and the plaintiff appealed in error. The ultimate question for decision is whether the judge applied the correct rule of law to the facts.

The defendant operated an automobile servicing establishment in a building fronting on Madison Avenue and Court Street. The plaintiff had left his car with the

defendant to be serviced. He entered the defendant's place of business, went to the wash rack near the rear, on which the car was then standing, and while he was examining the car he was bitten by the defendant's watch dog which was chained nearby. Notwithstanding a contrary contention by the defendant, the judge held that the plaintiff was an invitee on the premises at the point where the injury occurred, but he was of the opinion that the plaintiff had been seasonably warned of the presence of the animal and not to go near him lest he be bitten, and hence, other questions aside, the doctrine of volenti non fit injuria barred a recovery. As against this contention, the plaintiff contends that the dog was vicious and known to be so by the defendant, and that to keep him on his premises where the public was invited was to maintain an absolute nuisance, as contra-distinguished to a nuisance grounded on negligence, and that in an action for injuries resulting from such a nuisance neither the doctrine followed by the judge nor that of contributory negligence is available as a defense.

The defendant's business house was about 300 feet long and about 300 feet wide on Madison Avenue, the width narrowing in the rear to 150 feet on Front St. The work shop and servicing equipment, including a large space for storage of motor vehicles, were in the rear of the building. In the front, a waiting room was provided for patrons. The custom was, when a patron called for a car, he would wait in this room until an employee brought it to the front of the building. To the extreme rear of the building was the paint shop with a door opening onto Front St. This door was apparently not for the use of customers. Toward the rear of the building and to one side, there was a grease rack and a wash rack used for

greasing and washing cars. As a part of his business the defendant provided over-night storage for large trucks loaded with valuable goods. He employed a night watchman to guard the premises after business hours and also kept a German police dog. During the daytime the animal was kept chained outside the building but was brought inside at night and secured with a six foot chain affixed to a hook driven in the floor adjacent to the wash rack. It was customary to turn the dog loose inside the building after it had been closed for the day and the employees had all left.

About 6:30 o'clock p. m. on the day of the accident the plaintiff called to get his automobile, which same two days before he had left to be repaired. Instead of coming through the front entrance, he entered from the rear through the door opening into the paint shop from Front Street. It was then about 6:30 p. m., thirty minutes past the defendant's regular closing time. The watchman had come on duty about 5:30 p. m. It was raining and he had brought the dog inside and fastened his chain to the hook in the floor adjacent to the wash rack. There were light burning in the building at that time, some of the lights having been turned off preparatory to closing up. The employees had quit and were preparing to leave the place. Three of them were in the vicinity of the wash rack when the plaintiff came in. Posted on the wall, within 4 or 5 feet from the hook to which the dog's chain was fastened, was a sign on which was the warning, "Keep out, bad dog," in letters about 6 inches high. The plaintiff's car was on the wash rack. He seemed to be familiar with the premises, and proceeded directly towards his car, without making any inquiry of the employees who were present, and without asking

any one's permission or consent. As he did so, the dog was barking loudly and one of the employees warned him in this language, "don't go around the dog, because he will bite you." To this warning the plaintiff responded that the dog would not bite him. He proceeded toward the car, the dog being at that time in front of it, which was apparently nearest the west wall. The plaintiff reached the back-end of the car first and was "feeling around the car." At that time he was out of reach of the dog, who was still barking. Notwithstanding the plaintiff proceeded to the front of the vehicle and while he was examining the car the dog bit him on the leg, tearing his trousers, frightening him greatly. He also sustained "a little cut about a half of an inch in length," in his efforts to get away from the dog. The injury on the leg was described by his witness as: "he just bit through his pants and knocked the skin off, it didn't even bleed."

The defendant had owned the dog for about a year at the time the accident occurred. There was some evidence that the animal had attacked one or two other persons. Some two years after the accident the defendant had the dog killed.

■ ■ We think the judge erred in ruling that the plaintiff was an invitee and hence the defendant owed him the duty to exercise ordinary care to avoid an injury to him while on the premises. The implied invitation to the public to visit a business house does not necessarily extend to every part of the building but only to those parts where it can be reasonably certain that patrons are expected to go and be. Hence the obligation of the proprietor to maintain the premises in a safe condition covers only such parts of the premises. Worsham

v. Dempster, 148 Tenn. 267, 255 S. W. 52; Chattanooga Warehouse & Cold Storage Co. v. Anderson, 141 Tenn. 288, 210 S. W. 153.

In Corder v. Lane, 18 Tenn. App. 51, 72 S. W. (2d) 570, we accordingly held that one who had taken his automobile to a garage for repairs, although an invitee when he came upon the premises, did not occupy that status when he had proceeded to the foot of an incline leading to a rack on which cars were placed to be greased and washed near the middle of the building where the proprietor's employees carried on their work.

But if we understand the plaintiff's contention, it is to the effect that even so, in keeping the dog under the circumstances stated, the defendant was maintaining what the law knows as an "absolute nuisance," and hence his responsibility was equivalent to that of an insurer.

The law does recognize the distinction between the maintenance of a condition which is unlawful and inherently dangerous to others, however much care may be exercised, and a condition rendered wrongful and dangerous only by reason of negligence. In the latter class of cases, contributory negligence bars a recovery, whereas, generally, to be available as a good defense in the former, the conduct of the injured person must have been tantamount to an indifference to consequences. This, upon the principle of volenti non fit injuria. The distinction is discussed at length in an opinion by Cardozo, C. J., in the case of McFarlane v. Niagara Falls, 247 N. Y. 340, 160 N. E. 391, 393, 57 A. L. R. 1.

But the rule imposing liability for the maintenance of an "absolute nuisance" there elucidated does not go as far as the plaintiff seems to think. In holding that the nuisance involved in that case arose by reason of negli-

gence of the defendant and hence was not absolute, the court said: "In thus limiting our ruling, we are not to be understood as holding by implication that where the nuisance is absolute, the negligence of the traveler is a fact of no account."

After supporting this view by a reference to a leading English case, and saying that the breadth of its pronouncement should likely be restricted, as indicated by certain New York cases defining liability for a particular kind of nuisance, the harboring of vicious animals, the court continues: "In nuisance of that order, the fault that bars recovery is fault so extreme as to be equivalent to invitation of injury or, at least, indifference to consequences. Here is a borderland where the concept of contributory negligence merges almost imperceptibly into that of acceptance of a risk. Bohlen [Studies in the Law of Torts], supra, p. 500; Warren, Volenti non fit injuria, 8 Harvard L. R. 57, 459, 461. Very often the difference is chiefly one of terminology. In strictness, however, to make out acceptance of the risk there must be foresight of the consequences. Smith v. Baker[1891], A. C. 325, 337, 355; Larson v. Nassau Electric R. Co., 223 N. Y. 14, 119 N. E. 92; Warren, supra. Behavior so reckless as to indicate indifference to peril on the part of a person of normal understanding may turn out in a given instance to be only contributory negligence, as where a drunken man, unable to measure the risk, drives madly through a crowded street. We have never yet held that fault so extreme can coexist with a right of action for damages, however absolute the nuisance." See, also Hoffman v. Bristol, 113 Conn. 386, 155 A. 499, 75 A. L. R. 1191.

█ Though it may be that theoretically, somewhat different concepts are involved, the rationale of this

conclusion is the same as that supporting the rule in this jurisdiction that, while mere ordinary contributory negligence will not operate to bar a recovery in an action founded on gross negligence, yet where the contributory negligence also is gross instead of ordinary, there is no liability. Consolidated Coach Co. v. McCord, 171 Tenn. 253, 102 S. W. (2d) 53; Southern R. Co. v. Whaley, 170 Tenn. 668, 98 S. W. (2d) 1061; Lowry v. Southern R. Co., 117 Tenn. 507, 101 S. W. 1157.

██ ██ In the present case there is no escape from the conclusion that the plaintiff's conduct evidenced a reckless indifference to consequences that was tantamount to an invitation to injury. Apart from the warning conveyed by the posted sign and the barking of the dog, he was explicitly warned that the animal would bite him if he went around it. Hence the only reasonable conclusion is that he fully appreciated the danger and voluntarily incurred the risk of the very injury he sustained. The fact that he did not testify as a witness leaves no doubt about that; for, from his omission so to do, the inference was justified and doubtless drawn that had he taken the stand his testimony would have been unfavorable to him on the crucial point. Fisher v. Travelers' Insurance Co., 124 Tenn. 450, 138 S. W. 316, Ann. Cas. 1912D, 1246; Standard Oil Co. v. State, 117 Tenn. 618, 100 S. W. 705, 10 L. R. A. (N. S.), 1015; Taylor v. Goodrich Tire & Rubber Co., 20 Tenn. App. 352, 98 S. W. (2d) 1094.

Thus the plaintiff's own conduct was essential to the existence of the risk in so far as he was concerned. Had he heeded the warning which he must be held to have understood and appreciated, there would have been no risk or injury. He voluntarily left a place of safety and voluntarily entered the reach of a known and appreciated

danger. The defendant not only did not invite him to do so, but expressly warned him against that course. To mulct the defendant and reward the plaintiff by allowing a recovery under these circumstances, it seems to us, would be to combat sound principles.

Let the judgment be affirmed.

Ketchum and Baptist, JJ., concur.