# MURPHY v. REYNOLDS et al.—212 S. W. (2d) 686.

Eastern Section. April 17, 1948.

Petition for Certiorari denied by Supreme Court, July 17, 1948.

Schoolfield & Graham, of Chattanooga, for appellants.

Meacham & Meacham and Thomas S. Myers, all of Chattanooga, for appellee.

GOODMAN, J. The original bill in this cause was filed by Clara Leavitt Murphy, the complainant below, against Hobart Reynolds, Luther Griffith and King Griffith, seeking the cancellation of a lease of certain coal property,

and an injunction restraining the defendants, their agents, servants and employees, from mining or hauling coal from said property, from removing any kind of equipment therefrom, and from cutting timber or trees on said property. Other relief sought by said bill, including an accounting by said defendants, are not before this Court upon appeal.

It appears from the proof that on the 6th day of September, 1945, the complainant, as Lessor, and the defendant Hobart Reynolds, as Lessee, entered into a lease contract whereby he was granted the sole and exclusive right of mining coal from certain seams of coal located under or upon complainant's property on Walden's Ridge in Hamilton County, Tennessee. The lease was for a term of three years from date and, among other conditions and stipulations, provided:

"The Lessee further covenants and agrees not to sell, transfer, or assign the estate hereby granted, or any part thereof, or any interest thereof to any person or persons, body, politic, corporate, without the written consent of Lessor; and any assignment or sub-lease without such written consent of Lessor shall, at the option of the Lessor, be null and void; and that no judicial transfer or conveyance thereof, made under any writ, process, order, judgment or decree of any court or by virtue of any proceedings in bankruptcy shall have the effect to transfer the interest, title or estate of Lessee in and to the property or the estate hereby leased or any part thereof for any time of terms whatever to any person or persons, body, politic or corporate, but any such attempted sale shall work a forfeiture of the lease and rights and interests of Lessee hereunder. . . ."

"It is further covenanted by and between the parties that if Lessee shall fail to comply with each and all of the

requirements, conditions, covenants, and agreements, which by the terms of this lease he is bound to perform or keep, or shall violate any of the covenants, conditions, or agreements on his part herein contained, then this lease, at the option of the Lessor, becomes terminated and at an end, and all the rights of the Lessee hereunder shall cease, and the Lessor or agent, may thereupon enter and take possession of the leased premises and aforesaid property and appurtenances in the same manner and to as full extent as she might or could do at the full expiration of the terms of this lease; it being expressly understood and agreed at the termination of this lease by the Lessor shall not operate to waive or release the claim or lien of the Lessor for unpaid coal previously mined from said premises or any unpaid portions of said monthly payments as agreed hereby, or for any other previous breech of contract or agreement by Lessee, and that action may thereafter maintained by the Lessor under this lease to recover for rent or royalty for such breech of covenant or agreement. And it is further expressly understood in the event of the termination of this lease, during any year of the lease, the liquidated rent or royalty shall be reduced in proportion to the unexpired portion of the year.

"For default in payment of rent, royalty or any other default by Lessee, Lessor, at her option may cancel this lease, giving Thirty (30) Days written notice to that effect."

The complainant in her bill alleges that the defendant, Reynolds, violated the provisions of the lease relating to a sale, transfer or assignment, by entering into a con-tract with the defendants, Luther Griffith and King Griffith, the nature and effect of which constitutes the principal issue for determination. The defendants, in their

answer, deny that said defendant has sold, transferred or assigned the estate created by said lease, or any part or interest therein, and allege that the complainant only desires to terminate the lease so that she can re-lease it for a greater royalty.

The Chancellor found from the proof that, ''. . . In May 1946, the defendant, Hobart Reynolds, sold all his mining equipment to King & Luther Griffith, co-defendants, who agreed to operate the mine and pay Reynolds a royalty of $.50 per ton on all coal mined by them; that the Griffiths hired and paid the miners who dug the coal; that the coal was loaded on trucks owned by the Griffiths who hauled it to the consumer and the consumer paid the Griffiths for the coal delivered; that Hobart Reynolds exercised no control over the miners or over the operation of the mines; that he had no say-so as to whom the coal should be sold or that he did not look to the purchaser for his money; that apparently all the interest Reynolds had under this oral agreement with the Griffiths was that of collecting the royalty of $.50 per ton mined by them.'' And concluded, ''. . . that from the foregoing findings of facts that Luther & King Griffith were not agents or employees of Reynolds, nor were they independent contractors, but sub-Lessees and the act of Reynolds in subleasing the mines to the Griffiths was a violation of the provisions of the lease against sub-leasing.'' The Court decreed the lease between the complainant and the defendant, Hobart Reynolds, cancelled and void; and ordered that the injunction previously issued upon the filing of the original bill in said cause be made permanent.

The Appellants have assigned errors to the decree of the Chancellor as follows:

''1. There was no evidence to support the findings of fact made by the Chancellor and the Chancellor erred in

finding that Reynolds exercised no control over the miners or over the operation of the mines and had sold all his interest therein.

"2. The Chancellor erred in finding that Reynolds had sub-leased to the Griffiths, that the lease had thus been violated and that the lease should be terminated."

 The written contract, said to exist, between Reynolds and the Griffiths is not before the court. Although the defendant Reynolds agreed to supply a copy for the record, the same was never filed; and, it therefore, becomes necessary for the court to determine the scope and purport of the agreement between the defendants from parol evidence with respect to its terms and from the mode of operation of the premises as disclosed by the record. Under the familiar rule in this State, the failure of this defendant to produce and file the contract raises the presumption that the same would operate to his prejudice. Standard Oil Co. v. State, 117 Tenn. 618, 100 S. W. 705, 10 L. R. A., N. S., 1015; Fisher v. Traveler's Insurance Co., 124 Tenn. 450, 138 S. W. 316 Ann. Cas. 1912D, 1246; Western Union Telegraph Co. v. Lamb, 140 Tenn. 107, 203 S. W. 752; Citizens Bank v. Langford, 6 Tenn. App. 238; Taylor v. Goodrich Tire & Rubber Co., 20 Tenn. App. 352, 98 S. W. (2d) 1094; Illinois Cent. Ry. Co. v. H. Rouw & Co., 25 Tenn. App. 475, 159 S. W. (2d) 839; Kurn v. Weaver, 25 Tenn. App. 556, 161 S. W. (2d) 1005; Martin v. Mills Bros. Co., 26 Tenn. App. 110, 168 S. W. (2d) 187; Brown v. Barber et al., 26 Tenn. App. 534, 174 S. W. (2d) 298.

██ The proof shows that in May 1947, the defendant, Reynolds, sold the equipment located at these mines to the other two defendants, and that thereafter the old mine was operated by Luther Griffith and the new mine operated by King Griffith. Coal mined from these

premises was delivered to the J. R. Barnes Coal Company where the sum of $4.10 per ton was paid, the sum of $3.60 per ton being retained by the Griffiths and the sum of 50¢ per ton paid to Mr. Reynolds who, in turn, paid the sum of 25¢ per ton to the complainant, Mrs. Murphy. It appears that the only termination date of the agreement between Reynolds and the Griffiths would be the expiration of the former's lease contract with Mrs. Murphy. Therefore, if there was a breach of covenant on the part of the Lessee, the breach occurred by reason of an assignment of the lease contract rather than a sub-lease of the premises. Whereas a sub-lease contemplates a reversion, an assignment is effective to transfer the whole interest of the Lessee in the term without the retention by him of any reversion. 32 Am. Jur. 298. Reed v. Estes, 113 Tenn. 200, 80 S. W. 1086; Brummitt Tire Co. v. Sinclair Refining Co. et al., 18 Tenn. App. 270, 75 S. W. (2d) 1022.

Bearing in mind the weight to be accorded a Chancellor's findings of fact where the case is tried on oral testimony, considering the opportunity which he had to observe the manner and demeanor of the witnesses, Mathis v. Campbell, 22 Tenn. App. 40, 117 S. W. (2d) 764; Jackson v. Jackson, 25 Tenn. App. 198, 154 S. W. (2d) 797; Trice v. McGill, 158 Tenn. 394, 13 S. W. (2d) 49, we view the evidence as supporting the Chancellor's findings on the present issues, and hold that the defendant Reynolds, through his contract with the Griffiths, breached the covenant contained in the lease prohibiting an assignment thereof. In our opinion, this case is distinguished from St. Louis Union Trust Co. v. Galloway Coal Co., C.C., 193 F. 106, cited on behalf of the Appellants, and others wherein pure operation contracts were entered into. Recognizing the rule that equity does not favor

forfeitures, Reed v. Estes, supra; Moore et al. v. Minnis, 11 Tenn. App. 88; Neubert et al. v. Messer, 15 Tenn. App. 210, and viewing the evidence in the light most favorable to the Lessee, and to maintaining the lease contract, the conclusion is inescapable that the Griffiths took over the two mines located on the Murphy property under an arrangement tantamount to an assignment of the lease-hold. One of the primary purposes of a covenant against assigning or sub-leasing is to preserve the personal responsibility and accountability of the party accepted as a Lessee, restrict the occupancy to him, and to prevent a delegation of the authority thus granted. Reed v. Estes, supra. Under the proof, it clearly appears that the Lessor's control of the premises, to the extent reserved in the lease, and the means afforded for the protection and maintenance thereof was prejudiced through the agreement with other parties not of her selection.

■■ A further question is presented with respect to the right of the complainant to exercise the option to terminate the lease without notice to the Lessee. Although there appears to be merit in the contention that by a reasonable construction of the instrument under consideration, the notice provision relates to termination thereof upon breach of the covenant pertaining to assignment or sub-leasing, as well as to default in payment of rent or royalty, etc., such defense is not available to Appellants here, because the same was not specifically pleaded. Gibson Suits in Chancery, 4th Ed., Sec. 71; and the requirement may be considered waived, 32 Am. Jur. 713; and it further appearing that the issue was not otherwise raised before the Chancellor it cannot be presented for the first time in this Court, Washington v. Atlanta Life Ins. Co., 175 Tenn. 529, 136 S. W. (2d) 493, 129 A. L. R. 54.

The decree of the Chancellor is accordingly affirmed. The Appellants and the sureties on their appeal bond will pay the costs of the appeal.

McAmis, J., concurs.

Howard, J., not participating.