MILDRED L. CAMPBELL and PATRICIA ANN THOMPSON, Plaintiffs in Error, v. GERALDINE HOFFMAN, Defendant in Error.—371 S.W. (2d) 174.

Eastern Section. May 17, 1963.

Heard by Western Section, at Knoxville.

Certiorari Denied by Supreme Court September 11, 1963.

Folts, Bishop, Thomas, Leitner, & Mann, Chattanooga, for plaintiffs in error.

H. Keith Harber and Robert J. Shockey, Chattanooga, for defendant in error.

BEJACH, J. In this cause, defendants in the lower court, Mildred L. Campbell and Patricia Ann Thompson, appealed in error from a judgment against them in the amount of $3,500 recovered by the plaintiff, Geraldine Hoffman. The parties will be referred to, as in the lower court, as plaintiff and defendants, or called by their respective names. Mildred L. Campbell is executrix of the estate of Dr. W. A. Thompson, former owner of the building involved in this cause.

Defendants are the owners of a building on the south side of East Ninth Street in the City of Chattanooga, Tennessee. This building has three entrances on East Ninth Street, the easternmost one being the private entrance to the ground floor dental offices of Dr. Luke Jackson, which had been maintained at that location for nine years, with his name and profession plainly printed in large letters on his front plate glass window. This

portion of the building is numbered 750 B. The westernmost entrance to the said building is labeled with the number 750 A. It was used for office space, but at the time of the accident here involved was vacant. The middle entrance to said building is labeled with the number 750. It has a plate glass door which serves as the entrance to living quarters at the rear of the first floor and to apartments on the second floor. Defendants resided in an apartment on the second floor. The middle entrance opens into a corridor or hallway, approximately 25 to 30 feet long, running toward the rear of the building with a landing at the far end, which is approached by three steps which serve the first floor apartments. There is also a stairway on the left leading to the second floor. There is no connection between the middle hallway and the office spaces on either side.

On February 6, 1961 at about 5:30 P.M., plaintiff arrived at defendants' building from the west, having made a dental appointment with Dr. Luke Jackson for her teenage daughter who accompanied her. It was admitted that both mother and daughter knew Dr. Jackson's street address, number 750 B, and that plaintiff had been in the apartment portion of defendants' building on several prior occasions. Plaintiff testified that she first tried the westernmost entrance to the building, and after finding that it was locked, she then went into the middle entrance, marked 750. She said that after going into the middle entrance, she and her daughter ascended the stairway to the second floor where she recognized defendants' apartment; after which she went back down to the first floor and walked down the corridor toward the rear of the building, going up the three steps to the landing. She knocked on a door, asking where

Dr. Luke Jackson's office was located. On being informed that Dr. Jackson's office could be reached only from his own private entrance on the outside of the building, plaintiff started back down the steps and out of the building. Plaintiff testified that something on the bottom step, she did not know what, caused her to fall, and as a result of the fall she was injured. All of the proof, including that of plaintiff, as well as that of defendant, established that plaintiff was found lying in the hallway at least 18 feet from the bottom of the three steps, and that plaintiff was wearing shoes with heels at least two and one-half inches high. Plaintiff's daughter had gone up and down the steps, but did not fall. On cross-examination, plaintiff admitted that she had telephoned Dr. Jackson at about 5:00 P.M. for a dental appointment for her daughter, and had been told that Dr. Jackson would wait fifteen minutes for her and the daughter to arrive at his office. In order to fill this engagement, plaintiff and her daughter had traveled across the City of Chattanooga; and plaintiff's daughter testified that she and her mother were in a hurry to reach the dentist's office.

Plaintiff's claim for liability is based on the contention that she was an invitee, that defendants' hallway was dimly and poorly lighted, and that the bottom step of the three steps leading to the landing was defective.

Defendants moved for a directed verdict, which motion was overruled, and the jury returned a verdict, in favor of plaintiff, for $3,500. After defendants' motion for new trial had been overruled, they perfected their appeal in error to this court.

In this court, defendants, as appellants, have filed five assignments of error. These five assignments of error

present for disposition only one question, which is whether or not the trial judge erred in overruling defendants' motion for a directed verdict. Defendants' contention that their motion for a directed verdict should have been granted is predicated upon three grounds, viz.: 1. That there is no evidence of actionable negligence on the part of defendants; 2. That plaintiff was not an invitee, and, consequently, that defendants owed no duty towards her, other than to refrain from willfully and wantonly injuring her; and, 3. That plaintiff's injuries were proximately caused by her own contributory negligence.

The only evidence as to condition of the premises is that the hallway where plaintiff fell was dimly lighted, and that the bottom step leading to the landing was slightly defective. The evidence established that there was a crack in the board which formed the bottom step of the three steps leading to the landing, which, according to the testimony and drawing of an engineer offered by defendants, amounted to only one-eighth of an inch. The city building inspector for the City of Chattanooga, who testified as a witness for plaintiff, but who had merely looked at the step, said that the crack in the step created an elevation of three-sixteenths to one-fourth of an inch. He admitted, however, that he had not measured said elevation, and that he would not argue with the engineer who had actually measured same. In any event, this step was covered by linoleum. The undisputed proof shows that there was a light in the hallway over the landing, and that same was lighted and burning. Even if plaintiff is entitled to be treated and considered as an invitee, this evidence, in our opinion, falls short of establishing actionable negligence on the part of defendants,

and does not entitle plaintiff to have her claim submitted to a jury.

Among the cases holding that even an invitee is not entitled to have his or her case submitted to a jury in the absence of proof of actionable negligence and causal connection with plaintiff's injuries are Harper v. American Nat'l. Bank & Trust Co., 193 Tenn. 617, 249 S.W. (2d) 583; Illinois Central R. Co. v. Nichols, 173 Tenn. 602, 118 S.W.(2d) 213; City of Memphis v. McCrady, 174 Tenn. 162, 124 S.W.(2d) 248; and Forrester v. City of Nashville, 179 Tenn. 682, 169 S.W.(2d) 860.

In Harper v. American Nat'l. Bank & Trust Co., Betty Harper and her husband brought suit against the American National Bank & Trust Co. to recover for injuries sustained by a fall down stairs when she caught a high heel on a metal strip, which was used to hold down linoleum at the top of the stairs, and which was warped in the center so that it was about three-sixteenths of an inch higher than the linoleum. The jury returned verdicts for plaintiffs, but, on motion for new trial the Circuit Judge set same aside and granted the motion for directed verdicts. The Court of Appeals reversed, but the Supreme Court granted certiorari, held that the evidence established as a matter of law, that defendant was not negligent, that plaintiff was guilty of contributory negligence, and that the case should be dismissed. From the opinion of Mr. Justice Prewitt, later Chief Justice, we quote, as follows:

"The proof shows that the condition of the steps had been the same since 1943. The exact condition of the steps and metal strip are shown by photograph introduced in evidence and made a part of the

record. The record further discloses that during this period of about four years that more than 100,000 people had used the staris without injury. At the time of the injuries the plaintiff was wearing shoes with high slender heels.

"In Illinois Central Railroad Co. v. Nichols, 173 Tenn. 602, 612-613, 118 S.W.(2d) 213, 217, the Court said:

" 'In order to impute to the owner knowledge of a dangerous thing, or place, the danger therefrom must be such as is recognized by common experience, or might reasonably be expected or anticipated by a person of ordinary prudence and foresight. Negligence consists in a failure to provide against the ordinary occurrences of life, and the fact that the provision made (here the ventilated slat floor) is insufficient as against an event such as might happen once in a life time (here that this customer for tomatoes would enter this freight car wearing a soft and worn rubber heel and twist it between the slats, and fall through the car door) does not make out a case of actionable negligence. * * * As said by Mr. Justice Holmes, when on the Massachusetts Court, "If men were held answerable for everything they did which was dangerous in fact, they would be held for all their acts from which harm in fact ensued. The use of the thing must be dangerous according to common experience, at least to the extent that there is a manifest and appreciable chance of harm from what is done, in view either of the actor's knowledge or of his conscious ignorance." Com. v. Pierce, 138 Mass. 165, 52 Am.Rep. 264. In harmony

are the holdings in this State that to render one liable for negligence, it must be shown that the damage was the ordinary or probable consequence of the act, or omission. Youngstown Bridge Co. v. Barnes, 98 Tenn. 401, 39 S.W. 714; East Tennessee V. & G. R. Co. v. De Armond, 86 Tenn. 73, 5 S.W. 600, 6 Am.St.Rep. 816; Weeks v. McNulty, 101 Tenn. 495, 496, 48 S.W. 809, 43 L.R.A. 185, 70 Am.St.Rep. 693.'

"In Schoonmaker v. Poughkeepsie Savings Bank, 258 App.Div. 990, 17 N.Y.S.(2d) 549, 550, the Court said:

" 'Action for damages for personal injuries suffered by plaintiff as a consequence of a fall down a staircase in the common hall of a six family apartment house in the City of Poughkeepsie, owned and controlled by defendant.

\* \* \* \* \* \*

" 'Plaintiff claimed that her heel caught on a brass strip on a landing at the top of a flight of stairs. The condition of which she makes complaint was not shown to be a negligent one. She herself did not discover the condition although she had washed down that portion of the staircase a few days before the accident. The most that any witness would say with respect to it was that there was a rise and elevation of the strip close to the bannister of about one-eighth of an inch. Such a condition is not negligent under the proof herein.'

"To the same effect is Campbell v. Resnick, 253 App.Div. 894, 1 N.Y.S.(2d) 890, 891. In that case the Court said:

" 'The only defect claimed and testified to was a crack in the board of the step, resulting in an elevation of an eighth of an inch.'

"In City of Memphis v. McCrady, 174 Tenn. 162, 124 S.W.(2d) 248, a concrete block of the sidewalk projected at an expansion joint 2½ inches above the adjoining block. Mrs. McCrady struck her heel against this projection, fell and was injured. The Court held that there was no liability because it could not be reasonably foreseen that it would cause injury to one using the sidewalk in the exercise of reasonable care, and that a verdict should have been directed for the defendant. See also Hood v. Allen, 190 Tenn. 56, 227 S.W.(2d) 534, 16 A.L.R.(2d) 1286.

" (1) We are of the opinion therefore that drawing all reasonable inferences from the undisputed proof, there is no actionable negligence shown on the part of the defendant.

" (2) Furthermore, passing for the moment the proposition of actionable negligence, we might add that the plaintiff was guilty of such contributory negligence as would bar her recovery as a matter of law under her own testimony.

\* \* \* \* \* \*

"The proof shows that thousands of persons passed up and down these steps annually and the defect in question was inconsequential." Harper v. American Nat'l. Bank & Trust Co., 193 Tenn. 620-622, 624, 249 S.W.(2d) 583, 584.

In the case of Forrester v. City of Nashville, 179 Tenn. 682, 169 S.W.(2d) 860, the Supreme Court, speaking through Mr. Justice DeHaven, affirmed a judgment of the Davidson County Circuit Court which had sustained a demurrer to a declaration alleging that plaintiff had stumbled on a city water meter box which projected about an inch above the pavement. From that opinion we quote, as follows:

"(1) In the instant case the declaration alleged that the meter box projected 'about an inch' above the pavement. A municipal corporation is not chargeable with negligence when accident, not likely to happen according to common experience, occurs because of slight defect in the sidewalk or street, from which danger was not reasonably to be anticipated as likely to happen. In 7 Quillin on Municipal Corporations, section 2956, the rule is thus stated:

" 'To be actionable the obstruction must be dangerous, and the danger must be such as a reasonably prudent person would have anticipated as a natural and probable result. Expressed otherwise, the well settled rule applicable to cases of this character is that to establish negligence it must be shown that the injury sustained is one that would probably flow from allowing the obstruction as it existed.'

"(2) *Probability, not possibility, governs* (Emphasis added) ; that it is 'possible' for some one out of many to trip over so slight a projection in the sidewalk as is here involved does not make it dangerous." Forrester v. City of Nashville, 179 Tenn. 685, 169 S.W.(2d) 861.

In the instant case the elevation on the step on which plaintiff tripped and fell was, at most, not over one-fourth of an inch. Plaintiff's daughter passed over it without falling, and it is obvious that many other users of defendants' premises had done likewise. In our opinion, defendants had no reason to foresee that an accident such as happened to plaintiff would occur. Consequently, even if plaintiff was entitled to be treated as an invitee, defendants' motion for a directed verdict should have been granted.

■ We think it is clear, however, that plaintiff was not an invitee, under the circumstances of this case, and, consequently, that defendants owed no duty towards her except to refrain from willfully or wantonly injuring her.

In the case of Brown v. Barber, 26 Tenn.App. 534, 174 S.W.(2d) 298, where plaintiff was bitten by a dog kept in the rear portion of the defendant's place of business, this court, Western Section, held that the plaintiff was not an invitee, and, in an opinion written by Anderson, P. J., said:

"We think the judge erred in ruling that the plaintiff was an invitee and hence the defendant owed him the duty to exercise ordinary care to avoid an injury to him while on the premises. The implied invitation to the public to visit a business house does not necessarily extend to every part of the building but only to those parts where it can be reasonably certain that patrons are expected to go and be. Hence the obligation of the proprietor to maintain the premises in a safe condition covers only such parts of the premises. Worsham v. Dempster, 148 Tenn. 267, 225 S.W. 52; Chattanooga Warehouse & Cold Storage Co. v. Anderson, 141 Tenn. 288, 210 S.W. 153.

"In Corder v. Lane, 18 Tenn.App. 51, 72 S.W.(2d) 570, we accordingly held that one who had taken his automobile to a garage for repairs, although an invitee when he came upon the premises, did not occupy that status when he had proceeded to the foot of an incline leading to a rack on which cars were placed to be greased and washed near the middle of the building where the proprietor's employees carried on their work." Brown v. Barber, 26 Tenn.App. 538-539, 174 S.W.(2d) 299-300.

In Brown v. Barber, as in the instant case, plaintiff entered through a wrong door and went to an area of defendant's premises to which an implied invitation to the public had not been extended. In the instant case, plaintiff had no business in that portion of plaintiff's property where she was injured, and, consequently, must be considered, at most, as a licensee.

In the more recent case of Smith v. Burks, (1957), 43 Tenn.App. 32, 305 S.W.(2d) 748, this court, Middle Section, speaking through Shriver, J., quoting from the case of Hatcher v. Cantrell, 16 Tenn.App. 544, 549, 65 S.W. (2d) 247, 249, and another case there cited, said:

"The qualification of the rule as stated by the Courts in both the above cases is as follows:

" 'The great weight of authority, however, qualifies this definition of implied invitation by providing that where one goes upon the premises of another, for any of the purposes stated above, he must confine himself to such parts of the premises as are included in the invitation. Such implied invitation does not involve in its scope such parts of the establishment to which the public is not invited. It is only

those parts of the premises where the person invited is expected to be that the owner is required to keep in a reasonably safe condition.

" 'As stated by one writer, operators of factories and mills do not impliedly invite customers into parts of their plants where the machinery is being operated, hotel keepers do not invite guests to their engine rooms, and carriers do not invite passengers to the many places not fitted up for their use. The foregoing conclusion is supported by the following authorities:' (Here follows a long list of authorities from numerous jurisdictions)." Smith v. Burks, 43 Tenn.App. 39, 305 S.W.(2d) 751.

In the instant case, the plaintiff's business was at the office of Dr. Luke Jackson, 750 B; and, while she was exploring in that part of the building where she was injured, she was on her own.

A case, on its facts, more nearly like the instant case than either of the cases referred to above, is Rhodes v. J. R. Watkins Co., 16 Tenn.App. 163, 65 S.W.(2d) 1098. In that case, the plaintiff had gone to the defendant's place of business seeking employment. She was referred to an office on the third floor, and told to take the elevator. Having failed to obtain employment, instead of entering the elevator to return to the ground floor, she undertook to descend by a stairway, on which she fell and injured herself. Certainly, she had more reason for using the stairway on which she fell and was injured than did the plaintiff in the instant case to use the stairway on which she fell. But it was held by this court, Western Section, in an opinion written by Senter, J., that she was not an invitee, but was a licensee, only. From that opinion, we quote as follows:

"We do not think that she sustained the relation of either an express or an implied invitee to the premises. We think that she was a licensee only. She was there on her own business seeking employment. She was not there for the benefit of the defendant, nor in any manner connected with defendant's business. She was not there in the capacity of a customer. Her only purpose in being there was to seek employment. The mere fact that when she had called on one or more previous occasions and was told that they could not give her employment at that time, but could probably use her at some future time, did not create the relation of an invitee to the premises. Sherman and Redfield on Negligence (6 Ed.) Sec. 706, thus defines an implied invitation:

" 'Invitation by the owner or occupant is implied by law, where the person going on the premises does so in the interest or for the benefit, real or supposed, of such owner or occupant, or in the matter of mutual interest, or in the usual course of business, or where the person injured was present in the performance of some duty, official or otherwise.' " Rhodes v. J. R. Watkins Co., 16 Tenn.App. 165-166, 65 S.W.(2d) 1099.

In the instant case, plaintiff was not on the premises of defendants in connection with any business which she had with them. We think the same result should be reached in the instant case as in the case of Rhodes v. J. R. Watkins Co.

Finally, on this phase of the case, we quote Headnote 2 of the Supreme Court's decision in Chattanooga Ware-

house & Cold Storage Co. v. Anderson, 141 Tenn. 288, 210 S.W. 153, which is:

"Duty of owner to keep premises in reasonably safe condition for those impliedly invited thereon extends only to those parts of the premises where person invited is expected to go."

From the Supreme Court's opinion in that case, written by Mr. Justice McKinney, we also quote, as follows:

"Conceding that Mr. Anderson was seeking Mr. King on business, and that he had transacted business with him before in the office of the storage company, there is nothing in the record to even suggest that he was ever invited into the wareroom, or that it was even suspected by the company that he would come into that private room, a place not open to the public, dark, unlighted, a part of the establishment he had never entered before.

"We are unable to see upon what theory it could be held that the storage company was obligated or owed any duty to Mr. Anderson to keep its wareroom in a safe condition.

"The theory of negligence was well stated by this court in Williams v. Nashville, 106 Tenn. [533] 538, 63 S.W. [231] 233, the court saying:

" 'For the theory of all negligence cases is that the defendant has violated some legal duty he owed plaintiff. So where such duty does not exist, however unfortunate the injury may be, and free from negligence, yet he must alone bear the consequences; he cannot impose them upon one under no obligation in law towards him, save not to

inflict, directly or indirectly, wanton injury upon him.' '' Chattanooga Warehouse & Cold Storage Co. v. Anderson, 141 Tenn. 295-296, 210 S.W. 155.

The case most nearly like the instant case, on its facts, which has called to our attention, in which a recovery was allowed, is American Nat'l. Bank v. Wolfe, 22 Tenn. App. 642, 125 S.W.(2d) 193. In that case, the plaintiff, having entered the bank to obtain change for a bill, after having accomplished this mission, undertook to find a rest room by descending a stairway to the basement. She fell on the stairway, and was injured. A recovery in that case was affirmed. The court expressly held, however, that the plaintiff was an invitee, under the facts of that case, and that her status in that capacity remained with her even after she had accomplished the mission for which she came into defendant's place of business, and while she was still on its premises.

Even if it be assumed, in the case at bar, that plaintiff was an invitee, and that defendants were guilty of negligence, both of which propositions we have excluded, nevertheless, plaintiff's right of recovery in this case would be marred by her own contributory negligence, or assumption of the risk involved. In the case of Rhodes v. J. R. Watkins Co., 16 Tenn.App. 163, 65 S.W.(2d) 1098, referred to above, in which it was held that the plaintiff was not an invitee and therefore not entitled to recover, the court's opinion, written by Senter, J., also said:

"We may add that plaintiff utterly failed to state any fact, or to give any explanation as to how she happened to fall, except to say that the stairway was dark. If it was dark she should not have en-

tered." Rhodes v. J. R. Watkins Co., 16 Tenn.App. 167, 65 S.W.(2d) 1100.

In the case of Gargaro v. Kroger Grocery & Baking Co., 22 Tenn.App. 70, 118 S.W.(2d) 561, the plaintiff, although held to be an invitee, was nevertheless denied a recovery, both because no actionable negligence was proved against defendant, and also because of her own contributory negligence or assumption of the risk involved. From the opinion of this court, Western Section, in that case, written by Special Judge William P. Moss, we quote as follows:

"Under this rule, liability ensues if an invitee is injured as a result of latent defects in flooring or hidden sources of danger; if obstructions are negligently placed in aisles by employees, as in Armstrong v. Kroger Grocery & Baking Co. supra [Mo. App., 78 S.W.(2d) 564]; if placed there by others and allowed to remain when the defendant has knowledge of the fact or the circumstances are such that by the exercise of ordinary care the defendant should have known the obstruction was present; and in similar cases.

"Such a duty on the part of the proprietor or management of the store does not relieve the customer or invitee of the duty of exercising ordinary care for his or her own safety; and upon failure to do so, the invitee is deemed contributorily negligent. This is a fundamental rule of the law of negligence, and requires no citation of authority.

"In approaching the merits of this case in the light of the above fundamental rules, we are mindful of

another fundamental doctrine which prevails in Tennessee,—that in considering a motion for directed verdict on behalf of the defendant, the inquiry should be whether there is any material evidence which, together with all reasonable inferences favorable to the plaintiff which may be drawn therefrom, reasonably tends to support the cause of action as stated in the plaintiff's declaration and as shown by the proof. If there is any such material evidence, the jury should be allowed to decide, upon a proper charge, whether the defendant is negligent or the plaintiff contributorily negligent.

"The doctrine of assumed risk, sometimes (as in Hatch v. Brinkley, 169 Tenn. 17, 80 S.W.(2d) 838), referred to as incurred risk, is usually applied to contract cases growing out of the relation of master and servant, but such is not always the case. The application of the doctrine is often simply another way of applying the rule of contributory negligence, and frequently the difference between the two is merely a difference in the choice of language or style of expression. In other words, the fact that one knows of potential danger and voluntarily subjects himself thereto may and often does render him contributorily negligent if accident or injury ensues. An appropriate statement along these lines is found in Loew's Nashville & Knoxville Corporation v. Durrett, 18 Tenn.App. 489, at page 503, 79 S.W.(2d) 598, wherein it is said by presiding Judge Faw (page 606):

" 'An invitee may rely upon the safety of the premises, if he is not aware of the danger (Rosenbaum v. Shoffner, 98 Tenn. 624, 633, 40 S.W.

1086), or there is no reason to apprehend danger (Ellis v. [Memphis] Cotton Oil Co., 3 Tenn.Civ. App. (3 Higgins) 642).'

\* \* \* \* \* \*

"And so, we think the doctrine of 'volenti non fit injuria' or assumption of risk, does apply to this case, and that plaintiff's testate assumed the risk of any dangerous consequence which could reasonably be foreseen from the practice of customers of this store placing their shopping baskets in its aisles. Either she was negligent herself in stepping on or into the basket or, if some one else kicked or pushed it in front of her suddenly and without warning, then her injuries and death were proximately caused by the independent, intervening negligent act of a third party, without concurring negligence on the part of the defendant." Gargaro v. Kroger Grocery & Baking Co., 22 Tenn.App. 74-75, 77, 65 S.W. (2d) 563.

The instant case, on its undisputed facts, is, in our opinion, a weaker one than any of the cases referred to above in which a recovery was denied, and we think that result should likewise be reached in this case.

For the reasons hereinabove stated, all of defendants' assignments of error will be sustained. The judgment of the lower court will be reversed and this cause dismissed. The costs of the cause will be adjudged against the plaintiff, Geraldine Hoffman.

Avery, (P. J. W. S.), and Carney, J., concur.