PAULA BENNETT, a minor, by her father, R. W. BENNETT, as next friend and R. W. BENNETT, Plaintiffs-in-Error, v. MILTON WOODARD d/b/a Ripley Lime Company and Troy Macklin Defendants-in-Error.—444 S.W.2d 89.

Western Section. January 1, 1969.

Certiorari Denied by Supreme Court August 4, 1969.

Joe C. Davis, Lexington, for plaintiffs in error.

A. V. McDowell, Memphis, for defendants in error, Thomason, Crawford & Hendrix, Memphis, of counsel.

MATHERNE, J. This cause originated in the Court of General Sessions for Madison County, Tennessee, wherein the plaintiffs sued for personal injuries and property damage as result of a collision between the automobile of plaintiffs and the truck of defendants. The General Sessions Judge gave judgment in favor of plaintiff, Paula Bennett, in the amount of $1,500.00 for personal injuries and in favor of her father, plaintiff, R. W. Bennett, in the amount of $1,589.15 for medical expenses and property damage. The defendants appealed both cases to the Circuit Court of Madison County, and the cause was heard before the Trial Judge sitting without a jury. The Trial Judge held the defendant guilty of negligence, the plaintiff guilty of contributory negligence, that the negligence of both parties combined was the proximate cause of the collision, and dismissed both suits. The plaintiffs have appealed in error to this Court. The parties will be referred to as they appeared below or by name.

By five Assignments of Error the plaintiffs present the issues that the preponderance of the evidence is contrary to the holding of the Trial Judge; that the facts did not

warrant an application of T.C.A. sec. 59-840 to the actions of the plaintiff driver; and that the Trial Judge erred in failing to award plaintiff damages as sought. Plaintiffs insist by Brief and oral argument before this Court that the Trial Judge erred as above outlined because the rule of gross negligence was not applied to the actions of the defendant. Defendant contends gross negligence was not pled and same was not before the Trial Judge.

The Summons as issued in each case by the Court of General Sessions contained the allegation that as plaintiff driver "was making her duly signaled turn, * * * her automobile * * * was negligently and carelessly run into with great force, violence and tremendous impact * * *'' and also charged the following specific acts of negligence: "(a) the defendants did not have their said truck under proper and reasonable control; (b) the defendants were not maintaining a proper and sensible lookout; (c) the truck of defendants was being driven at a much higher rate of speed than was prudent and proper under the circumstances and conditions existing at the time.'' The record does not reveal the plea which the defendants made to the Summons. We assume that the general issue plea was verbally pled in the Court of General Sessions. On appeal to the Circuit Court no further pleadings were filed, thus the matter was before that Court on the Summons as issued from the Court of General Sessions and the plea of general issue.

This cause was tried without a jury, therefore, this Court must try the case de novo upon the record from the Court below supported by the presumption that the judgment of the Trial Court is correct as to the factual situation if the evidence is in equipoise. If in the judgment of this Court the evidence preponderates against

the finding of the Trial Court, the presumption as to its correctness vanishes, and this Court must enter such judgment as it deems the preponderance of the evidence warrants. Perry v. Carter (1949) 188 Tenn. 409, 219 S.W.2d 905, at 908; T.C.A. sec. 27-303.

This collision occurred on Highway 45 approximately two miles south of Jackson, Tennessee. At the point of the collision Highway 45 runs north and south and is intersected at right angles by Hart's Bridge Road. Highway 45 is generally a four-lane highway with two lanes for traffic traveling each direction. The two northbound lanes are separated from the two south-bound lanes by a median strip. For a distance of approximately 1½ miles along the east side of Highway 45 a third lane has been constructed for the use of north-bound traffic. This third lane extends to the south and to the north of the Hart's Bridge Road intersection. This third, or most easterly lane, is of concrete pavement whereas the other two lanes are asphalt or blacktop. There is a solid white painted line separating this third easterly most lane from the middle lane. A broken white painted line separates the middle lane from the most westerly north-bound lane. Plaintiffs insist that this third, or most easterly lane, is merely a "parking" or "emergency" lane and that it is not used, nor intended to be used as a travel lane. Plaintiffs insist that this third lane is used only for cars to stop and load or unload children attending South Side High School and for parking. There were no vehicles parked in this third lane at the time of the accident.

Plaintiff, Paula Bennett, a senior at South Side High School, duly licensed as a driver, was driving a 1965 model Chevrolet automobile owned by her father, plaintiff, R. W. Bennett. Paula was on her way to school driv-

ing north on Highway 45 and was to turn to her right or eastwardly onto Hart's Bridge Road. Paula Bennett was in the middle lane proceeding north with her right turn blinker lights blinking and had made or was making her right turn onto Hart's Bridge Road when her vehicle was struck in the right side by the front of defendant's truck traveling north on Highway 45 in the right or most easterly lane for north-bound traffic. The collision occurred in the right or most easterly lane where the same intersected Hart's Bridge Road. As result of this collision, plaintiffs' automobile was knocked northwardly across and beyond Hart's Bridge Road at total distance of about 150 feet. The truck which struck the Bennett vehicle was being driven by defendant, Troy Macklin, and was owned by defendant, Milton Woodard d/b/a Ripley Lime Company.

Plaintiffs introduced the testimony of the Tennessee highway patrolman who investigated the accident. This patrolman stated that he considered the third lane as an emergency or parking lane, however, he stated there were no signs posted so designating or restricting the lane for that use, and he knew of no reason why a north-bound vehicle could not travel in that lane. Plaintiffs also introduced the testimony of a civil engineer with the Department of Highways, State of Tennessee, who testified from blueprints of Highway 45 at Hart's Bridge Road intersection to the effect that there were only two travel lanes for north-bound traffic, and that the third lane to the east of the easterly most travel lane was an "emergency" or "parking" lane which was not defined, platted or planned as a travel lane for north-bound traffic. Plaintiff driver and the highway patrolman testified that they considered a right turn by north-bound traffic from

the eastern most travel lane (middle lane) onto Hart's Bridge Road to be a proper right turn at that point. However, we hold that the plaintiffs failed to establish as a fact that the use of the third or eastern most lane was for parking or emergency only.

It is obvious that north-bound through traffic on Highway 45 would normally use the two most westerly lanes. However, there is no proof in the record which prohibits such traffic from using the third or most easterly lane. No signs were posted which limited its use to stopping, parking or emergency. The general public had every right to drive on this third lane in the exercise of that degree of care commensurate with the circumstances present at a given time.

We, therefore, agree with the Trial Judge that when Paula Bennett made a right turn from the eastern most travel lane (middle lane) of Highway 45 onto Hart's Bridge Road, she violated T.C.A. sec. 59-840 which provides as follows:

"59-840. *Required position and method of turning at intersections.*—The driver of a vehicle intending to turn at an intersection shall do so as follows: (a) Right turns—Both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb of the roadway."

We also agree with the Trial Judge that Paula Bennett in making this right turn without observing traffic to the rear of her vehicle violated T.C.A. sec. 59-842 which provides as follows:

"59-842. *Turning Movements.*—(a) No person shall turn a vehicle at an intersection unless the vehicle is in

proper position upon the roadway as required in sec. 59-840, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. * * *''

The violation of these statutes by plaintiff driver constituted negligence per se. However, whether this negligence was the direct and proximate cause of the collision, or whether it constituted contributory negligence which would bar recovery under the circumstances, presents another question.

Plaintiff testified that at a point approximately 600 feet south of the intersection she observed an automobile behind her which vehicle was followed by a truck; these vehicles were 3 to 4 car lengths behind her; that she was at that time in the middle lane and both vehicles following her were in the middle lane; that she activated the right turn blinker on her vehicle and remained in the middle lane. The automobile behind her passed her to the left, and she then made her turn onto Hart's Bridge Road when her vehicle was struck by the truck. Plaintiff stated that she did not look to the rear of her vehicle prior to making the turn.

L. C. Smith, the driver of the automobile immediately behind Paula Bennett, testified that he overtook the Bennett vehicle at a point approximatey 500 feet south of the intersection; that he was in the middle lane and immediately behind him in the middle lane was defendant's lime truck and trailer. He stated that the Bennett vehicle was signaling a right turn, and he passed said vehicle to the left; that as he proceeded about 50 feet beyond the Ben-

nett vehicle he heard air brakes being applied, and the crash occurred between the Bennett vehicle and the truck which was behind him.

J. T. Bryan testified that on the occasion he was traveling north on Highway 45 approximately 300 to 400 feet behind the lime truck; that he observed the lime truck in the middle lane, but did not see the Bennett vehicle prior to its being hit in that the truck obstructed his view of the Bennett car. Witness stated that the truck was in the middle lane and pulled to the right lane and applied brakes (brake lights came on) and then the accident occurred. The truck pulled to the right lane about 200-300 feet before reaching Hart's Bridge Road intersection. Bryan stated that the truck hit the curb on the right side of the highway.

Defendant, Troy Macklin, testified that he was the driver of the defendant's lime truck; that he struck the Bennett vehicle when it made a right turn in front of him at the Hart's Bridge Road intersection. Defendant stated that Miss Bennett passed him on Highway 45 at a point about 600 feet south of the intersection, that he caught up with her as she slowed down for the right turn. Defendant stated that Paula Bennett made her right turn signal and turned right at the same time, at which time Paula Bennett was in the middle lane and defendant was in the right lane; that he was in the right or eastern most lane for 3/10 a mile south of the intersection; that when Paula Bennett made her turn in front of him he pulled farther to the right and hit the east curb of the highway, and then crashed into the Bennett vehicle. Defendant testified he was driving 40 to 45 miles per hour at the time, and that his truck was loaded with 20 to 25 tons of lime. Defendant testified that the speed limit at the point of

the accident was 15 miles per hour. Defendant, Macklin, testified that the truck he was driving was owned by co-defendant, Milton Woodard, and at the time of the accident he (driver) was hauling a load of lime from a lime pit east of Savannah, Tennessee, to Ripley, Tennessee, for Milton Woodard d/b/a Ripley Lime Company.

There is considerable discrepancy in the testimony as to how far defendant's truck was behind the Bennett vehicle. Also the distance defendant's truck traveled in the right lane varies from 3/10 to a few car lengths. The trial Judge found "* * * and when Miss Bennett started to make a right turn, the truck behind her also turned right and the two cars collided in the intersection." We agree that the preponderance of the evidence establishes this finding of fact.

The Trial Judge by Memorandum Opinion held as follows:

"The Court feels that Troy Macklin, the driver of the truck belonging to Milton Woodward, d/b/a Ripley Lime Co., was guilty of negligence in th operation of his truck. We also feel that Miss Bennett was guilty of contributory negligence and that the combined negligence of both Miss Bennett and Mr. Macklin was the proximate cause of the accident and the resulting injuries and damages. The Court, therefore, finds for the defendant in each of the cases under consideration."

We have herein agreed with the Trial Judge that Paula Bennett was guilty of negligence per se in the violation of T.C.A. sec. 59-840 and 59-842. However, we differ with the Trial Judge as to what was the proximate cause of the accident.

What is meant by proximate cause is not necessarily that which is next or last in time or place, but that which is a procuring, efficient and predominate cause. Closeness in causal relation, rather, is the meaning. Grigsby & Co. v. Bratton (1913) 128 Tenn. 597, 163 S.W. 804.

We hold that a fair interpretation of the testimony results in a preponderance of the evidence being that the drive as made by Troy Macklin was the proximate cause of the collision. He was driving a heavy truck and trailer loaded with 20 to 25 tons of lime at a speed of 40 to 45 miles per hour in an admitted 15 mile-per-hour speed zone. The preponderance of the evidence is that Miss Bennett had her turn indicator blinking "right turn" at a point several hundred feet south of Hart's Bridge Road and had slowed down for the intersection, all of which would indicate to any reasonable, prudent man that a right turn could be expected and was imminent, even though said right turn may have been illegal. The driver of the automobile immediately behind the Bennett vehicle (L. C. Smith) observed this right turn signal and passed to the left which was what any reasonable, prudent person would have done under the circumstances. When this automobile immediately behind the Bennett vehicle passed Miss Bennett to the left, there is no proof in the record of any reason why defendant, Troy Macklin, could not have at that time observed the right turn signal of the Bennett vehicle. There is no proof in the record but what Troy Macklin could have also passed the Bennett vehicle to the left if he had been driving properly. This was one-way traffic, the left lane was open, there was only one car to the rear of Macklin at a distance of from 300 to 400 feet (J. T. Bryan) which would not have interfered with Macklin passing the Bennett vehicle to the left. The only

conclusion we can reach is that defendant, Troy Macklin, was driving this heavily loaded truck in flagrant violation of the speed limit, that he was not keeping proper lookout ahead, nor was his vehicle under proper control, and as result he could not slow down or so drive as to avoid the collision. He came upon the Bennett vehicle at such a rate of speed that he could not control the heavy truck, and he therefore swerved right, applied brakes, hit the curb and crashed into the Bennett car. We, therefore, hold that the direct and proximate cause of the collision was the negligence of Troy Macklin.

We hold the conduct of Troy Macklin amounted to and was a wanton disregard of the rights and safety of persons and property on the highway. In the first place he admitted he was guilty of reckless driving when he stated his speed was 40 to 45 miles per hour through the school speed zone. The statute in this respect states:

"T.C.A. sec. 59-852(e). Any person who shall drive at a speed exceeding fifteen (15) miles per hour when passing a school during recess, or while children are going to or leaving school during its opening or closing hours, shall be prima facie guilty of reckless driving."

This accident happened at 8:00 a.m. Paula Bennett was on her way to the school in question. All parties and witnesses admitted that 15 mile-per-hour speed limit was in force. Reckless driving is defined by statute:

"T.C.A. sec. 59-858. *Reckless driving.* (a) Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving."

Secondly, we find the conduct of the defendant, Macklin, as outlined therein, constituted such entire want of care

as would raise a presumption of a conscious indifference to the consequences of his acts. In the case of Fontaine for Use of Traveler's Ins. Co. v. Mason Dixon Freight Lines (1961) 49 Tenn.App. 598, 357 S.W.2d 631, Presiding Judge McAmis, gave the following definition of gross negligence:

> "On the question of gross negligence it was said in Inter-City Trucking Co. v. Daniels, 181 Tenn. 126, 129, 178 S.W.2d 756, 757:
>
>> 'In Stagner v. Craig, 159 Tenn. 511, 517, 19 S.W.2d 234, 23, since approved and followed in Consolidated Coach Co. v. McCord, 171 Tenn. 253 at page 258, 102 S.W.2d 53, citing other cases, "gross" negligence was defined as, "such entire want of care as would raise a presumption of a conscious indifference to consequences." If one knowingly, consciously, violates a duty imposed upon him to take measures prescribed to protect the lives of others, he is guilty of more than a mere neglect to exercise ordinary care. * * * "a common definition of negligence. And yet, it does not cross the border line of studied or deliberate intent to do the specific injury. The mental attitude is one of indifference to injurious consequences, conscious recklessness of the rights of others. Such conduct may well be characterized as wanton. Bouvier defines wanton negligence as: 'A heedless and reckless disregard for another's rights, with the consciousness that the act or omission to act may result in injury to another.' " ' "

If the plaintiff driver be deemed guilty of contributory negligence, as the Trial Judge found to be the fact, plaintiffs would not be barred in these cases because the

defendant driver was guilty of gross negligence. The defense of contributory negligence is not available when the cause of action is based upon gross negligence. Stinson v. Danel (1967) 220 Tenn. 70, 414 S.W.2d 7; Inter-City Trucking Co. v. Daniels (1944) 181 Tenn. 126, 178 S.W.2d 756.

The defendants contend this cause of action is not founded upon gross negligence, and, therefore, the above rule is not applicable. This cause originated in the Court of General Sessions, and the Summons in that Court was the plaintiffs' statement of cause of action in the Circuit Court, the alleging portion of which has been herein noted.

In the case of Shew v. Bailey (1951) 37 Tenn.App. 40, 260 S.W.2d 362, the Court held that "whether the declaration charges gross negligence is to be determined by whether the facts constitute gross negligence irrespective of the conclusion of the pleader." In that case the Court did not look to the declaration for its averments because the facts proved did not constitute gross negligence and therefore it was held that the Trial Judge erred in charging the rule of gross negligence.

There is ample authority to establish the legal proposition that a judgment is not to be rendered based upon acts of negligence not pleaded. And this is the case regardless of how well such facts may have been proven. Memphis Light, Gas & Water Division v. Evans (1964) 54 Tenn. App. 223, 389 S.W.2d 80, and cases cited.

It is to be noted that we are not here dealing with a situation in which the plaintiff asked for punitive damages, but failed to allege facts which would entitle him to such damages; nor a situation in which plaintiff failed to

prove the acts of negligence alleged; neither is this a case where plaintiff alleged one act of negligence and proved another. Therefore, the application of the rule of gross negligence in this case does not enlarge the plaintiff's demand, nor give him any rights not sued for in the first place. The application of the rule in this case has the wholesome effect of not permitting the defendant to justify the wantonness of his acts by setting up contributory negligence of plaintiff as a bar.

We, therefore, hold that where the acts of negligence alleged are proven to be gross negligence, it is the duty of the Trial Judge, sitting without a jury, to apply the rule of gross negligence insofar as same constitutes a bar to the defense of contributory negligence on the part of the plaintiff.

The facts as proved, and as admitted by the defendant, establish by a preponderance of the evidence that the acts of negligence charged in the Summons did amount to gross negligence on the part of the defendant. Where the preponderance of the evidence establishes gross negligence on the part of the defendant instead of ordinary negligence as found by the Trial Judge it is our duty to apply the law of gross negligence. Fontaine v. Mason Dixon Freight Lines, supra.

Defendants contend that if the acts of the defendant be wanton, then the acts of the plaintiff driver were just as wanton in that she violated two statutes and plaintiffs should therefore be barred.

We recognize the rule that a plaintiff guilty of gross contributory negligence cannot recover from a defendant guilty of gross negligence. Brown v. Barber (1943) 26 Tenn.App. 534, 174 S.W.2d 298; Fontaine v.

Mason Dixon Freight Lines, supra. However, a review of the evidence does not establish gross negligence on the part of the plaintiff driver. She gave the signal for a right turn for several hundred feet south of the intersection. The driver immediately behind her (L. C. Smith) had ample opportunity to observe that signal and to act accordingly. The fact that she made the signaled turn from the middle lane without looking to the rear of her vehicle was a violation of the two statutes herein set out, but said action under the circumstances could not be deemed gross negligence under the definition herein stated. The Tennessee highway patrolman stationed in the county testified that the turn as made by Paula Bennett was in his opinion a proper turn. Then Paula Bennett testified she thought she was making a legal turn. Even though we hold the right turn as made illegal, we do not find in the action of Paula Bennett that degree of indifference to the injurious consequences of her acts as is necessary to constitute gross negligence.

We are mindful of the rule that the Trial Judge as the seer and hearer of the witnesses is in better position to weigh the testimony than those who do not so observe. Lanius v. Donnel (1968) 222 Tenn. 58, 432 S.W.2d 659. We have scrupulously adhered to this rule, and we do in most every respect agree with the findings of the Trial Judge as is herein set out. However, we do differ as to the degree of negligence committed by defendant, Troy Macklin, and find a preponderance of the evidence established gross negligence on his part.

We, therefore, hold that the preponderance of the evidence is that the direct and proximate cause of the collision was the gross negligence of the defendant, Troy Macklin; that the plaintiff driver was guilty of negligence

per se in the violation of the statutes cited, and that should this ordinary negligence of plaintiff driver be deemed contributory negligence the plaintiffs would still be entitled to recover based on defendants' proven gross negligence. Assignments of Error I, II and IV are sustained.

Having found the Trial Court, sitting without a jury, erred in holding in favor of defendants we must determine the amount of damages, if any, due each plaintiff.

No expert testimony was introduced as to injuries received by Paula Bennett. This plaintiff testified that she missed two days from school due to the injuries. That she was bruised over the body and limbs, her neck, back and right knee were injured. She was rendered highly nervous, and that she still suffered from headaches and backaches as result of the injuries. She was treated by Dr. Allen Williams, Dr. Thomas K. Ballard and Dr. Jack Booth. She took a physical therapy course of treatment which helped her. Her father testified that Paula was not hospitalized and had not been working for an income prior to the accident. Mrs. R. W. Bennett, Paula's mother, testified that Paula was nervous, upset and slept only with great difficulty for many weeks following the accident, and that her said daughter still complains of headaches and backaches. There is no proof of permanent injury. Medical bills in the total amount of $89.15 were proved.

Plaintiff, R. W. Bennett, proved the above medical bills as paid by him and as necessary for treatment of his daughter due to injuries received. Witness, W. E. Moore, testified he was sales manager and appraiser for Les Reinke Buick Company; that he knew the Bennett

vehicle prior to the accident and made an appraisal of it after the accident; that in his opinion the vehicle was worth between $1,850.00 and $1,900.00 prior to the accident and that after the collision it was worth $350.00. R. W. Bennett testified that his vehicle was worth $1,850.00 prior to the accident and $350.00 immediately after the accident, and that he had never had it repaired.

Under all the proof we hold that Paula Bennett should recover of the defendants the sum of SEVEN HUNDRED, FIFTY AND NO/100 ($750.00) DOLLARS as damages for personal injuries sustained; and the plaintiff, R. W. Bennett, should recover of the defendants the sum of FIFTEEN HUNDRED AND NO/100 ($1,500.00) DOLLARS property damages plus EIGHTY-NINE AND 15/100 ($89.15) DOLLARS medical expense, making a total recovery for R. W. Bennett of FIFTEEN HUNDRED, EIGHTY-NINE AND 15/100 ($1,589.15) DOLLARS, both amounts to bear interest at the rate of six (6%) per cent per annum from the date of filing of this Opinion.

Judgments of Trial Court reversed. Judgments may be entered in this Court in accordance with this Opinion. Court costs in the Trial Court and this Court are adjudged against defendants-in-error, Milton Woodard and Troy Macklin.

Carney, P.J. (W.S.), and Taylor, J., concur.